GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006

**Plaintiff**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

GREGORY WESTON,

      Plaintiff,

   v.

ELIZABETH LEFITI, MINELLA
LAW GROUP, APC, and KATHY
MINELLA,

      Defendants.

Case No: 3:23-cv-00896-L-DDL

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

District Judge: The Hon. M. James Lorenz
Date: July 17, 2023
Time:10:30 a.m.
Location: Courtroom 5B

**TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................................... 1

II.     PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE *NOERR-PENNINGTON* DOCTRINE. ................................................................................................ 2

III.    THE LITIGATION PRIVILEGE DOES NOT PROTECT WIRETAPPING. ......... 4

IV.     THE CONDUCT ACTUALLY ALLEGED IN THE COMPLAINT IS CRIMINAL, SO NOT "PROTECTED ACTIVITY." ........................................................... 8

V.      DEFENDANTS' CONTENTION THAT VOIGT WAS "SEEKING A RESTRAINING ORDER" CONTRADICTS THE COMPLAINT AND IS FALSE. ................................................................................................................ 9

VI.     PLAINTIFFS' FEDERAL WIRETAP CLAIM IS MERITORIOUS. .................... 13

VII.    PLAINTIFF STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ......................................................................... 14

VIII.   PLAINTIFF'S PRIVACY CLAIMS ARE MERITORIOUS. ............................... 16

IX.     CAL. CIV. CODE § 1714.10 IS A STATE PROCEDURAL RULE. ................... 19

X.      PLAINTIFF'S CLAIMS DO NOT IMPERMISSIBLY INVADE THE ATTORNEY-CLIENT RELATIONSHIP. ....................................................... 20

XI.     CONCLUSION.......................................................................................... 22

*Weston v. Lefiti et al.*, 3:23-cv-00896-L-DDL
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**CASES**

*Action Apartment Ass'n, Inc. v. City of Santa Monica*,
  41 Cal. 4th 1232 (2007) ........................................................................... 6

*Al-Ahmed v. Twitter, Inc.*,
  603 F. Supp. 3d 857 (N.D. Cal. 2022) .................................................. 16

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) ............................................................. 2, 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 2

*BP Alaska Expl., Inc. v. Superior Court*,
  199 Cal. App. 3d 1240 (1988) ............................................................ 22

*Celebrity Chefs Tour, Ltd. Liab. Co. v. Macy's, Inc.*,
  16 F. Supp. 3d 1141 (S.D. Cal. 2014) ................................................. 11

*Dietz v. Meisenheimer & Herron*,
  177 Cal. App. 4th 771 (2009) ........................................................ 20, 21

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ............................................................. 16

*Flatley v. Mauro*,
  39 Cal. 4th 299 (2006). ........................................................................ 8

*Franklin v. Prospect Mortg., LLC*,
  2013 U.S. Dist. LEXIS 172894 (E.D. Cal. Dec. 6, 2013) ..................... 11

*Friche v. Hyundai Motor, Am.*,
  2022 U.S. Dist. LEXIS 16922 (C.D. Cal. Jan. 28, 2022) ...................... 14

*Greer v. Pac. Gas & Elec. Co.*,
  2015 U.S. Dist. LEXIS 172724 (E.D. Cal. Dec. 28, 2015) .................... 12

iii

*Gunter v. Virginia State Bar,*
238 Va. 617 (1989) ........................................................................................ 22

*Hooper v. North Carolina,*
379 F. Supp. 2d 804 (M.D.N.C. 2005) ............................................................ 15

*Imperium Ins. Co. v. Unigard Ins. Co.,*
16 F. Supp. 3d 1104 (E.D. Cal. 2014) ............................................................ 10

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020) .......................................................................... 16

*Indem. Corp. v. Weisman,*
803 F.2d 500 (9th Cir. 1986) .......................................................................... 13

*Joseph v. Am. Gen. Life Ins. Co.,*
2020 U.S. Dist. LEXIS 194373 (S.D. Cal. Oct. 20, 2020) ............................... 9

*Kimmel v. Goland,*
51 Cal. 3d 202 (1990) ............................................................................ 4, 5, 6

*Malin v. Singer,*
217 Cal. App. 4th 1283 (2013) ......................................................................... 8

*Marsh v. Curran,*
362 F. Supp. 3d 320 (E.D. Va. 2019) .............................................................. 15

*Naruto v. Slater,*
888 F.3d 418 (9th Cir. 2018) ...................................................................... 2, 12

*Navarro v. Block,*
250 F.3d 729 (9th Cir. 2001) ............................................................................ 2

*Neilson v. Union Bank of Cal., N.A.,*
290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................................... 12

*Pacific Coast Fed'n of Fishermen's Ass'ns v. Gutierrez,*
2008 U.S. Dist. LEXIS 31462 (E.D. Cal. Apr. 16, 2008) ........................... 10, 11

iv

*People v. Wilson,*
　　56 Cal. App. 5th 128 (2020) .................................................................. 17

*Ponomarenko v. Shapiro,*
　　287 F. Supp. 3d 816 (N.D. Cal. 2018) .................................................. 13

*Powell v. Union Pac. R.R. Co.,*
　　864 F. Supp. 2d 949 (E.D. Cal. 2012) ............................................. 18, 19

*Project Sentinel v. Komar,*
　　2020 U.S. Dist. LEXIS 97653 (E.D. Cal. June 2, 2020) ..................... 2, 12

*Pyankovska v. Abid,*
　　65 F.4th 1067 (9th Cir. 2023) ......................................................2, 3, 4, 23

*Reilly v. Greenwald & Hoffman, LLP,*
　　196 Cal. App. 4th 891 (2011) ................................................................ 21

*Ribas v. Clark,*
　　38 Cal. 3d 355 (1985) ......................................................................... 6, 16

*Richter v. Ausmus,*
　　2023 U.S. Dist. LEXIS 61308 (N.D. Cal. Apr. 6, 2023)........................ 22

*Rogers v. Ulrich,*
　　52 Cal. App. 3d 894 (1975) ................................................................... 19

*Rusheen v. Cohen,*
　　37 Cal. 4th 1048 (2006) ........................................................................... 6

*Smith v. BP Lubricants USA Inc.,*
　　64 Cal. App. 5th 138 (2021) ............................................................ 14, 15

*State Farm Fire & Cas. Co. v. Superior Court,*
　　54 Cal. App. 4th 625 (1997) .................................................................. 22

*Steel v. City of San Diego,*
　　726 F. Supp. 2d 1172 (S.D. Cal. 2010) ............................................ 19, 20

v

*Strawn v. Morris, Polich & Purdy, LLP,*
    30 Cal. App. 5th 1087 (2019) ............................................................ 6

*Thomas v. Intercontinental Hotels Grp.,*
    2022 U.S. Dist. LEXIS 100947 (C.D. Cal. Apr. 14, 2022) .................... 11

*United States v. Koziol,*
    993 F.3d 1160 (9th Cir. 2021) ............................................................ 2

*United States v. Wuliger,*
    981 F.2d 1497 (6th Cir. 1992) ........................................................... 22

*Vera v. O'Keefe,*
    791 F. Supp. 2d 959 (S.D. Cal. 2011) ........................................... 17, 18

*Walker v. Life Ins. Co. of the Sw.,*
    953 F.3d 624 (9th Cir. 2020) ............................................................. 11

*Williams v. Matteson,*
    2020 U.S. Dist. LEXIS 217216 (E.D. Cal. Nov. 19, 2020) .................. 17

*Wilson-Condon v. Allstate Indem. Co.,*
    2011 U.S. Dist. LEXIS 86892 (C.D. Cal. Aug. 4, 2011) ................. 6, 7, 8

**STATUTES**

18 U.S.C. § 2511(2)(d) ......................................................................... 13

Cal. Penal Code § 630 ...................................................................... 15, 16

Cal. Penal Code § 633.6(b) .................................................................. 10

*Weston v. Lefiti et al.,* 3:23-cv-00896-L-DDL
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

## I.  __INTRODUCTION__

This action alleges violations of state and federal anti-wiretapping and invasion of privacy claims based on allegations that Defendant attorneys procured their client, non-party Hannah Voigt, to initiate a telephone call with Plaintiff where she asked him a series of questions they had scripted out, and which Voigt secretly and illegally recorded. After creating the illegal recording of a private telephone call, Voigt distributed an edited version of the telephone call recording to (1) Defendants, (2) Weston's mother, (3) Weston's father, and (4) Weston's co-worker.

After receiving the illegal recording, Defendants (1) used the recording to create a transcript of the recorded telephone call, (2) made multiple copies of the recording and transcript, and (3) distributed the recording and transcription to their employees and vendors. See generally Doc. 1. As soon as Weston became aware that Defendants were in possession and distributing the illegal recording of him, he wrote to them demanding that they cease doing so. He informed them that (1) he did not consent to the recording, (2) the recording was inadmissible as evidence, and (3) the recording was illegal. Defendants ignored Plaintiff Weston's request and continued their possession and distribution of the recording. Only after their refusal to stop breaking federal and California wiretapping statutes did Plaintiff bring this suit.

The motion to dismiss should be denied in its entirety. Unfortunately, it is fairly common for family law attorneys like Defendants to use illegal recordings in divorce and custody litigation. It is so common there is ample case law involving essentially identical facts as those seen here and addressing the exact defenses Defendants make in their motion. Rather than address these cases, Defendants have chosen to just ignore them. For example, they argue they are protected by the *Noerr-Pennington* doctrine, but fail to cite a 2023 published decision of the Ninth Circuit reject that exact defense raised in the exact same context: by family-law attorney defendants in a case by the victim of wiretapping. See *Pyankovska v. Abid*, 65 F.4th 1067, 1071 n.1 (9th Cir. 2023), discussed *infra* at III.

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Project Sentinel v. Komar*, 2020 U.S. Dist. LEXIS 97653, at *2 (E.D. Cal. June 2, 2020) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A plaintiff is required to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Project Sentinel*, 2020 U.S. Dist. LEXIS 97653, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Project Sentinel*, 2020 U.S. Dist. LEXIS 97653, at *2-3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In resolving a Rule 12(b)(6) motion, '[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" *Project Sentinel*, 2020 U.S. Dist. LEXIS 97653, at *3 (quoting *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018)).

## II.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE *NOERR-PENNINGTON* DOCTRINE.

Defendants contend Plaintiffs' claims are barred by the *Noerr-Pennington* doctrine, which is "a generic rule of statutory construction" that courts should "avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539-40 (9th Cir. 2022) (citation omitted). The doctrine, which is "derived from two Supreme Court cases, requires courts to construe ambiguous statutes to avoid burdening petitioning activity protected by the First Amendment." *Pyankovska v. Abid*, 65 F.4th 1067, 1071 n.1 (9th Cir. 2023) (citing *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021).

Without addressing the relevant legal standard, Defendants contend that the doctrine applies here because "Plaintiff's claims against Defendants are exclusively based on Defendants' alleged conduct in representing their client Voigt in the Family Law Action." Mot. at 26. The argument fails.

1   In the Ninth Circuit,

2   there is a three-step test to determine whether conduct that allegedly violates a
3   statute is immunized from liability. Under the test, the court asks: "(1) whether the
4   lawsuit imposes a burden on petitioning rights," "(2) whether the alleged activities
5   constitute protected petitioning activity," in other words, "neither the Petition
6   Clause nor the *Noerr-Pennington* doctrine protects sham petitions," and "(3)
    whether the statute at issue may be construed to [avoid] that burden. If the answer
7   at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-
    Pennington.*"

8   *Pyankovska v. Abid*, 65 F.4th 1067, 1077 (9th Cir. 2023) (quoting *B&G Foods N. Am., Inc.*,
9   29 F.4th at 535).

10   In *Pyanskovska*, the plaintiff sued her ex-husband and his attorney, John Jones, in a
11   custody dispute "alleging federal and state wiretap violations." *Pyankovska*, 65 F.4th at
12   1071. The suit sought "to hold Jones liable in damages for disclosing illegally intercepted
13   communications in the state court custody proceedings." *Pyankovska*, 65 F.4th at 1077.
14   Jones, like Defendants here, argued that he was "immunized from liability by *the Noerr-*
15   *Pennington* doctrine." *Pyankovska*, 65 F.4th at 1075. The Ninth Circuit rejected the
16   argument, as

17   First, Pyankovska's lawsuit seeks to hold Jones liable in damages for disclosing
18   illegally intercepted communications in the state court custody proceedings. But
19   **Jones does not credibly argue that a successful damages action in federal court**
20   **imposes an unconstitutional "burden" on the state court litigation**. The illegally
     obtained communications found their way into state court where the evidence was
21   reviewed by the court-appointed psychologist and by the court and Abid prevailed:
22   he won the custody litigation. In light of Abid's victory, it is hard for Jones credibly
     to argue that the litigation of the custody motion was "burdened."
23

24   Second, *Noerr-Pennington* "[i]mmunity . . . applies only to what may fairly be
25   described as petitions . . . ." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 1184
26   (9th Cir. 2005). We have explained that "[a] complaint, an answer, a counterclaim
     and other assorted documents and pleadings, in which plaintiffs or defendants make
27   representations and present arguments to support their request that the court do or
28   not do something, can be described as petitions without doing violence to the

3

concept." *Id.* Under this definition, Jones and Abid were entitled to participate and did participate in petitioning activity. But once they were in court, they were obligated to play by the rules applicable to all litigants. Federal and state rules limit in enumerable ways what litigants can say and do. . .  The sections of the Federal Act that prohibit the disclosure of evidence obtained in violation of the Federal Act and provide that "no part of the contents of [any illegally intercepted] communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court" are similar restrictions that apply in both state and federal courts. 18 U.S.C. § 2515.

*Pyankovska*, 65 F.4th at 1077 (emphasis added). Thus, the Ninth Circuit concluded that the attorney's "right to petition in a case with no public significance does not grant Jones immunity from the penalties prescribed by Congress for those who violate the Wiretap Act." *Id.* at 1077. Defendants "were not at liberty to set their own rules. Jones was free to file and argue the custody motion—i.e., to petition—but he was not free to support that motion with illegal evidence." *Id.*

## III.   THE LITIGATION PRIVILEGE DOES NOT PROTECT WIRETAPPING.

Defendants' claim that the "litigation privilege bars Plaintiff's claims arising from Defendants' alleged legal advice to Voigt." Mot. at 16. This is wrong for two big reasons. First, the complaint *never* alleges Defendants gave "legal advice to Voigt." That's Defendants' defense, not the allegations of the complaint. What the complaint actually does allege is that Defendants engaged in several specific illegal acts. Lawyers who engage in criminal conspiracies do not get a "get-out-of-jail-free" card by alleging, contrary to the complaint, that their crime is immunized from liability as "legal advice."

Second, even if the complaint were limited to alleging Defendants merely provided legal advice to a client (it is not), such conduct still is not protected by the litigation privilege as the "advice" here was to violate state and federal law. Legal advice to break laws is simply not protected by any privilege.

In *Kimmel v. Goland*, Plaintiff mobile home residents, "in anticipation of suing park management" made recordings of "conversations with park management without their consent or knowledge." *Kimmel v. Goland*, 51 Cal. 3d 202, 206 (1990). "The tape

4

recordings were subsequently transcribed by plaintiffs' attorney, R. Richard Farnell." *Id.* at 207.

"After making the recordings, plaintiffs filed suit against park management for interference with prospective economic advantage, intentional infliction of emotional distress, bad faith, and unlawful business practices." *Kimmel*, 51 Cal. 3d at 207. While that

> action was pending, park management learned of the existence of plaintiffs' tape recordings and filed a cross-complaint alleging violation of [] California's Invasion of Privacy Act. Park management sought damages as provided by Penal Code § 637.2 against plaintiffs and Attorney Farnell. As alleged in the cross-complaint, between January and April of 1983, plaintiffs taped confidential telephone conversations without park management's consent or knowledge. [] Although [attorney] Farnell was not present during the actual recording of the conversations, he transcribed the tapes and furthered the unlawful agreement to record the confidential conversations by aiding, abetting, counseling, advising and encouraging plaintiffs in their recording of the calls.

*Kimmel*, 51 Cal. 3d at 207-08 (cleaned up).

The cross-plaintiff, like Plaintiff Weston here, alleged "injury from the taping of confidential telephone conversations," which violated Cal. Penal Code § 632. *Kimmel*, 51 Cal. 3d at 209. Like Defendants here, the cross-defendants argued that "the litigation privilege of section 47(2) rendered them immune from liability for the alleged violation of the privacy act." *Id.* at 208. The Supreme Court noted the "distinction between injury allegedly arising from communicative acts, i.e., the attorney's testimony, and injury resulting from noncommunicative conduct, i.e., the invasion of privacy resulting from the attorney's eavesdropping." *Id.* at 211. Because the cross-plaintiff sought "damages under Penal Code section 637.2, not for injuries arising from the broadcast and publication of private conversations, but from the recording of them," court held the "cross-complaint for damages for violation of Penal Code section 632 is not barred by the litigation privilege of section 47(2)." *Kimmel*, 51 Cal. 3d at 212.

Similarly, in *Rusheen v. Cohen*, the California Court of Appeal noted "illegal recording of confidential telephone conversations" and "eavesdropping" are

5

"noncommunicative and thus unprivileged" *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (citing *Kimmel*, 51 Cal. 3d at 205, 209). See also *Strawn v. Morris, Polich & Purdy, LLP*, 30 Cal. App. 5th 1087, 1095 (2019) (same); *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1248 (2007) (same).

In *Ribas v. Clark*, "Plaintiff Ribas and his wife began divorce proceedings that ultimately resulted in a court-approved property settlement agreement." *Ribas v. Clark*, 38 Cal. 3d 355, 358 (1985). Later the wife asked her attorney "to listen on an extension telephone" on a call she initiated with her husband, and the attorney defendant "obliged." *Id.* "During an arbitration hearing, defendant [attorney] testified to her recollection of the conversation on which she had eavesdropped." *Id.* The husband then sued the attorney "for violations of criminal statutes prohibiting various forms of eavesdropping (Pen. Code, §§ 631, subd. (a), and 637), as well as for invasion of privacy, intentional infliction of emotional distress, and outrage." *Id.* The eavesdropping attorney-defendant argued that the litigation privilege barred the claims. *Id.* at 365. The California Supreme Court held claims for statutory damages pursuant to Cal. Penal Code § 637.2 "are not barred by the judicial privilege" because, while claims over the attorney's testimony were barred, "the right to such an award accrues at the moment of the violation." *Ribas* 38 Cal. 3d at 365. Bolstering the California Supreme Court's holding that the husband's claim for privacy violations against his wife's eavesdropping attorney is not protected by the litigation privilege is California's "manifest legislative purpose to accord every citizen's privacy the utmost sanctity" and "provide those who suffer an infringement of this aspect of their personal liberty a means of vindicating their right." *Id.*

In *Wilson-Condon v. Allstate Indem. Co.*, the plaintiff alleged that she "purchased an automobile insurance policy from Allstate that" covered bodily harm from uninsured drivers. *Wilson-Condon v. Allstate Indem. Co.*, 2011 U.S. Dist. LEXIS 86892, at *2 (C.D. Cal. Aug. 4, 2011). She was "involved in an accident with an uninsured auto in which Plaintiff suffered a severe foot fracture" and "submitted a claim to Allstate under her policy,

but Allstate denied it." *Id.* The plaintiff further alleged that the doctor Allstate hired to examine her "illegally recorded confidential communications between Plaintiff and Plaintiff's counsel's agent without their consent and then transcribed the communications and transmitted them to Allstate." *Id.* Based on these allegations, the plaintiff brought "claims against Dr. Ouzounian for invasion of privacy in violation of the California Privacy Act, Cal. Penal Code §§ 632 et seq., for conspiracy, and for intentional infliction of emotional distress." *Id.* at *3-4.

The doctor argued the claims "fail on their face because they are based on conduct that is privileged under California Civil Code sections 47(b)(2) and (b)(3)." *Id.* at *9. They argued that the litigation privilege immunized the doctor from

> Plaintiff's claims, including the invasion of privacy claim, because he engaged in the allegedly wrongful acts in the context of an uninsured motorist arbitration, an "official proceeding" covered by Civil Code section 47(b).

*Wilson-Condon*, 2011 U.S. Dist. LEXIS 86892, at *9.

The district court noted that the "litigation privilege protects only publications and communications" and that "the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." *Wilson-Condon.*, 2011 U.S. Dist. LEXIS 86892, at *10. The court observed that the plaintiff's claim was "based at least in part on noncommunicative actions. Plaintiff claims that the eavesdropping on and recording of her confidential communications, without more, violated her rights." *Id.* Further, "California law is clear that the mere act of recording is noncommunicative." *Id.* (citing *Kimmel*, 51 Cal. 3d at 210-12). Thus, the court held the plaintiff's claim was "not barred by the litigation privilege to the extent that she seeks statutory damages under California Penal Code section 637.2 for the invasion of her privacy." *Wilson-Condon v. Allstate Indem. Co.*, 2011 U.S. Dist. LEXIS 86892, at *10 (C.D. Cal. Aug. 4, 2011). As the court explained:

> Penal Code section 637.2 provides that any person injured by a violation of the Privacy Act may bring an action against the perpetrator for $5,000 in statutory damages, regardless of whether "the plaintiff has suffered, or be[en] threatened

with, actual damages." The right to such a statutory damages award accrues at the moment of the violation.

*Wilson-Condon*, 2011 U.S. Dist. LEXIS 86892, at *11 (citations omitted).

Here, as in *Wilson-Condon*, Plaintiff's claims are "based at least in part on noncommunicative actions." See *Wilson-Condon*, 2011 U.S. Dist. LEXIS 86892, at *10. Thus, Defendants contention that the litigation privilege bars Plaintiff's claims fails. *Wilson-Condon*, 2011 U.S. Dist. LEXIS 86892, at *11.

## IV.   THE CONDUCT ACTUALLY ALLEGED IN THE COMPLAINT IS CRIMINAL, SO NOT "PROTECTED ACTIVITY."

Defendants center their arguments not around the criminal acts alleged in the complaint, but around their own five-page counter-narrative that repeatedly and expressly disagrees with the allegations of the complaint. This counter-narrative Defendants offer is a false one, but also improper for a motion to dismiss. Defendants say "Plaintiff's claims against Defendants entirely arise from their alleged conduct as Voigt's attorney – filing pleadings and making statements in connection with their representation of Voigt in the Family Law Action . . . all of which is protected activity." Mot. at 14. Defendants mischaracterize the actual allegations. Plaintiff alleges that Defendants (1) conspired to illegally record a private telephone call between Weston and his romantic partner, (2) transcribed the illegal recording, and (3) disseminated the recording to their staff, vendors, Weston's family, and Weston's co-worker. See Compl. ¶¶ 9-81.

This conduct, taken as true and construed liberally, is *criminal*, so cannot be dismissed on the pleadings. In *Flatley v. Mauro*, the California Supreme Court held:

section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition.

*Flatley v. Mauro*, 39 Cal. 4th 299, 317 (2006).

Where, as here, a party "alleges criminal conduct, there is no protected activity." *Malin v. Singer*, 217 Cal. App. 4th 1283, 1302-03 (2013). *Gerbosi v. Gaims*, like this matter, involved a wiretapping victim suing an attorney defendant for invasion of privacy. The

8

attorney also argued his behavior was protected, but such argument was rejected because "[t]he bottom line is this: section 425.16 was not enacted to protect an attorney who allegedly hired an 'investigator' like Anthony Pellicano to wiretap telephones so as to get an unfair advantage in a client's legal matters." *Gerbosi v. Gaims, Weil, W. & Epstein, LLP*, 193 Cal. App. 4th 435, 446 (2011).

## V.   DEFENDANTS' CONTENTION THAT VOIGT WAS "SEEKING A RESTRAINING ORDER" CONTRADICTS THE COMPLAINT AND IS FALSE.

In ruling on a motion to dismiss, courts "must assume the truth of all factual allegations and construe all inferences from them in the light most favorable to the non-moving party." *Joseph v. Am. Gen. Life Ins. Co.*, 2020 U.S. Dist. LEXIS 194373, at *7 (S.D. Cal. Oct. 20, 2020) (citing *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)).

Here, Plaintiff's Complaint alleges that "Voigt was **not** seeking a restraining order" at the time of the illegal recording and the call "**did not** concern domestic violence or other violence." Compl. ¶ 26 (emphasis added). In their Motion, Defendants contradict this allegation. They contend their scheme to illegally record Weston's private telephone call did not violate California privacy laws because Voigt wa*s* seeking a DVRO against Weston, and, they assert, "Penal Code § 633.6 authorized Voigt to record the conversation without obtaining Weston's consent." Mot. at 20. First, the contention fails, as "all factual allegations and construe all inferences from them in the light most favorable to the non-moving party." *Joseph*, 2020 U.S. Dist. LEXIS 194373, at *7.

Second, Defendants' contention that Voigt was seeking a restraining order at the time of the recording is false. Pursuant to Penal Code § 633.6,

upon the request of a victim of domestic violence ***who is seeking a domestic violence restraining order***, a judge issuing the order may include a provision in the order that permits the victim to record any prohibited communication made to him or her by the perpetrator.(b) Notwithstanding the provisions of this chapter, and in accordance with federal law, a victim of domestic violence ***who is seeking a domestic violence restraining order from a court***, and who reasonably believes that

9

a confidential communication made to him or her by the perpetrator may contain evidence germane to that restraining order, may record that communication for the exclusive purpose and use of providing that evidence to the court.

Here, Voigt had no court order permitting her to record Weston. Thus, Defendants must rely on Penal Code § 633.6(b), which provides an exception for those "***seeking a domestic violence restraining order from a court***, **and** *who reasonably believes that a confidential communication made to him or her by the perpetrator may contain evidence germane to that restraining order*.*"*

The complaint flatly states that neither of these conditions are met. Defendants point to the fact that Voigt and Weston, the following January, both moved for and were granted restraining orders. But those cross-motions came months after the recorded call. And the complaint further alleges that the content of the recorded call had nothing to do with domestic violence.

Thus, the allegations in the complaint cannot possibly be read as alleging the wiretap fell into the "domestic violence" exception.  Here, the evidence strongly suggests that Voigt was not seeking a restraining order at the time of the illegal recording, but working to rekindle her relationship with Plaintiff.

Defendants request that the Court take judicial notice of 33 exhibits spanning 280 pages. Docs. 7-2 and 7-4. All of the Exhibits are documents filed in Weston's 2022 custody petition. Citing *Imperium Ins. Co. v. Unigard Ins. Co.*, 16 F. Supp. 3d 1104, 1108, n.1 (E.D. Cal. 2014) and *Pacific Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 2008 U.S. Dist. LEXIS 31462, at *83-84 (E.D. Cal. Apr. 16, 2008), Defendants argue that "the court may take judicial notice of the allegations and claims asserted by the parties in court filings." RJN at 2.

Defendants misstate the law. In *Imperium Ins.*, the parties "jointly request[ed] that the Court take judicial notice of the allegations in the complaint," such that facts were not in dispute. *Imperium Ins. Co. v. Unigard Ins. Co.*, 16 F. Supp. 3d 1104, 1108 n.1 (E.D. Cal. 2014). In *Pacific Coast*, the court "denied" the request "without prejudice," but took judicial

notice of "the fact that each of the three declarations was filed on behalf of the Federal Defendants to express views in related ESA litigation over the 2004 OCAP and the Delta smelt." *Pacific Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 2008 U.S. Dist. LEXIS 31462, at *84 (E.D. Cal. Apr. 16, 2008).

A "court can take notice of the existence of pleadings, but not the truth of the facts recited therein." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 637 (9th Cir. 2020). See also *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."); *Celebrity Chefs Tour, Ltd. Liab. Co. v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1147 (S.D. Cal. 2014) ("While a court may take judicial notice of the existence of matters of public record, such as a prior order or decision, it should not take notice of the truth of the facts cited therein."); *Thomas v. Intercontinental Hotels Grp.*, 2022 U.S. Dist. LEXIS 100947, at *12 n.2 (C.D. Cal. Apr. 14, 2022) (denying request for judicial notice and noting that "a court can take notice of the existence of pleadings, but not the truth of the facts stated"); *Franklin v. Prospect Mortg., LLC*, 2013 U.S. Dist. LEXIS 172894, at *4 (E.D. Cal. Dec. 6, 2013) ("[C]ourts may take judicial notice of the existence of pleadings and court orders that are matters of public record, but may not take notice of the truth of the facts asserted within them.").

Here, Defendants repeatedly and improperly request that the Court take judicial notice of purported facts contained within their exhibits, rather than merely the existence of such documents. For example, Defendants assert that:

- "On or about March 17, 2022, Voigt and H.V. returned to Voigt's home state of Wisconsin." Mot. at 9 (citing RJN Ex. 2)
- "Voigt alleged her entire relationship with Weston was 'volatile and abusive.'" Mot. at 3 (citing RJN Ex. 3).

11

- "Weston had coerced her to quit her job and move in with him and 'had complete financial and physical control over' her."  Mot. at 3 (citing RJN Ex. 3)

- "Weston had since tried to convince Voigt to return to California by offering to cover her travel expenses and by threatening her with custody orders." Mot. at 3 (citing RJN Ex. 3)

- "Voigt and Weston began communicating directly and came to an agreement that H.V. and Voigt would come to San Diego to visit." Mot. at 10 (citing RJN Ex. 18)

- "On January 3, 2023, Voigt and H.V. drove to the airport and boarded a flight to return to Wisconsin. Weston, however, contacted Harbor Police and informed them Voigt was violating a restraining order by leaving California with H.V." Mot. at 10 (citing RJN Ex. 18)

Beyond requesting judicial notice of purported facts contained within pleadings, Defendants rely on documents from the custody action to argue the *intent* of the parties in that action. While this may be appropriate later, introducing declarations filed in another case as evidence of the defendant's intent is no more appropriate on a motion to dismiss than introducing e-mails and deposition transcripts

The "intent of parties" "is not an appropriate fact for judicial notice." *Greer v. Pac. Gas & Elec. Co.*, 2015 U.S. Dist. LEXIS 172724, at *11 (E.D. Cal. Dec. 28, 2015). See also *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1151 (C.D. Cal. 2003) ("While the stipulation is the type of court document that can be judicially noticed, the parties' intent in entering into the stipulation is not.").

Further, such factual assertions are improper in a Rule 12 motion. Defendants' assertions directly contradict Weston's allegation that "Voigt was not seeking a restraining order, and [the recording] did not concern domestic violence or other violence." Compl. ¶ 26. "In resolving a Rule 12(b)(6) motion, '[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" *Project Sentinel*, 2020 U.S. Dist. LEXIS 97653, at *3 (quoting *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018)).

## VI.   PLAINTIFFS' FEDERAL WIRETAP CLAIM IS MERITORIOUS.

Defendants contend Plaintiffs' "Federal Wiretap Act claim fails as a matter of law, because the statute does not apply where, as here, the person who made the recording is a party to the communication." Mot. at 26 (citing 18 U.S.C. § 2511(2)(d)). This misstates the federal statute, which provides that:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State*.

18 U.S.C. § 2511(2)(d) (emphasis added). Here, the complaint flatly alleges the recording was made "for the purpose of committing" both "tortious" and "criminal" acts "in violation of the Constitution of the laws of the United States or of any state."

Defendants concede this exception in a footnote, but argue that "the focus is upon whether the purpose for the interception–its intended use–was criminal or tortious when it made the tape." Mot. at 26 n.6. Defendants then assert that "Voigt made the recording to protect against a future attempt by Plaintiff to trap her [] with claims of purported kidnapping" their son so "the exception does not apply."  Mot. at 27 n.6. The complaint, however, says nothing about such intent. Rather, it alleges the motivation of inflicting economic and emotional harm against Plaintiff. Defendants' argument relies on purported facts which are fully outside of the pleadings and which flatly contradict Weston's allegations that "Voigt was not seeking a restraining order," at the time of the recording, and that the recorded call "did not concern domestic violence or other violence." Compl. ¶ 26. "On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 826 (N.D. Cal. 2018) (citing *Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Further, at this stage, the complaint's "allegations are taken as true and construed in favor of the non-moving party." *Friche v. Hyundai Motor, Am.*, 2022 U.S. Dist. LEXIS 16922, at *6 (C.D.

13

Cal. Jan. 28, 2022).

## VII.   PLAINTIFF STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing

(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 147 (2021).

Defendants contend Plaintiff's claim for intentional infliction of emotional distress fails because "Plaintiff fails to establish any 'outrageous' conduct of Defendants." Mot. at 21. Defendants falsely characterize Plaintiff's claim, asserting the "gravamen of Plaintiff's claims is Defendants supposedly improperly used objectionable evidence in the Family Law Action." Mot. at 21. They contend that such conduct "does not arise to "outrageous" conduct." Mot. at 21. They cite no case with such a holding.

Defendants' strawman argument fails. Plaintiff's claim is not merely based on Defendants' use of "objectionable evidence in the Family Law Action." Mot. at 4. Rather, Plaintiff alleges that Defendants (1) conspired to illegally record a conversation between Weston and their client, Hannah Voigt, who then with their blessing emailed it out to Weston's family and co-workers; (2) transcribed the illegal recording, (3) disseminated the recording to MLG employee's and vendors, and (4) submitted the recording and transcription to the Court in a family law proceeding, despite Weston notifying them that the recording was illegally obtained. See Compl. ¶¶ 9-26 and 74-81. Defendants' strawman argument conveniently ignores these well-pleaded allegations.

In *Marsh v. Curran*, the plaintiff

sued his wife's lawyers . . . and members of her family . . . for allegedly recording Plaintiff's conversations with his attorneys and purported romantic partner. Monika

14

1
2

Pawar, and using the contents of those recordings in his underlying divorce proceedings.

3

*Marsh v. Curran*, 362 F. Supp. 3d 320, 325 (E.D. Va. 2019).

4
5
6
7

Marsh, like Weston here, brought claims for violation of state and federal wiretapping statutes and intentional infliction of emotional distress stemming from the defendant's illegal recording and use of the recording as evidence in a family law proceeding. *Id.* at 326. The defendants moved to dismiss the claim, arguing that the conduct at issue was not reckless or outrageous. The court rejected the argument, holding the plaintiff

8
9
10
11
12
13
14

It is common knowledge that an individual would suffer emotional distress by learning that his communications with [his] romantic partner were intercepted, shared, and used against him in his divorce. Therefore, Plaintiff has sufficiently pled that Defendants' conduct was reckless. […] Similarly, a reasonable jury could determine that Defendant Lawyers' alleged use and disclosure of the contents of those communications in the context of the underlying divorce proceeding was outrageous or intolerable. See id. As a result, Plaintiff has sufficiently pled that the Defendants engaged in outrageous or intolerable conduct.

15
16
17
18
19
20

*Marsh v. Curran*, 362 F. Supp. 3d 320, 331 (E.D. Va. 2019). See also *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 816 (M.D.N.C. 2005) (conduct deemed outrageous where the defendants "engaged in unlawful wiretapping and surveillance of Plaintiff"). Here, too, Plaintiff has sufficiently alleged "outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 147 (2021).

21
22

Further, in passing the Invasion of Privacy Act, California Legislature determined that the

23
24

eavesdropping upon private communications [. . . ] has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

25

Cal. Penal Code § 630.

26
27

The scheme to record Weston's phone call with his romantic partner, send the recording to his family and co-workers, and illegally use it against him in a custody case

28

therefore could be found by a jury to be "outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 147 (2021).

## VIII. **PLAINTIFF'S PRIVACY CLAIMS ARE MERITORIOUS.**

Contrary to Defendants' assertion their plot to secretly record and disseminate to multiple third parties a private call between romantic partners only had a "de minimis" harm on Weston and is therefore immune from suit, "privacy torts do not always require additional consequences to be actionable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). With respect to "the tort of intrusion upon seclusion," "the 'intrusion itself' makes the defendant liable." *Eichenberger*, 876 F.3d at 983 (citing RESTATEMENT (SECOND) OF TORTS § 652B cmt. b. (Am. Law Inst. 1977)). See also *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 871 (N.D. Cal. 2022) ("[I]nvasion of privacy by itself is sufficiently concrete and particularized to confer Article III standing.").

As the Ninth Circuit eloquently explained,

the legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act, SCA, and CIPA. See S. REP. NO. 99-541, at 2 (1986) ("[The Wiretap Act] is the primary law protecting the security and privacy of business and personal communications in the United States today."); Id. at 3 ("[The SCA] is modeled after the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. to protect privacy interests in personal and proprietary information ...."); Cal. Pen. Code § 630 (noting that CIPA was passed "to protect the right of privacy of the people of this state"). **Thus, these statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.**

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (emphasis added).

Defendants further contend that under California's privacy statutes, civil damages can only be awarded against the person who physically created the recording. Mot. at 18. First, this argument ignores Plaintiff's well-pleaded allegations that Defendants conspired

16

with Voigt to make the illegal recording at issue, and then entirely separate from her transcribed and disseminated the recording. See Compl. ¶¶ 9-17, 45-50, and 52-60. Further, this argument ignores Plaintiff's allegations that (1) "[a]ll Defendants had knowledge of the facts and circumstances surrounding some or all of the illegally intercepted communications and their use . . . such that they had actual knowledge that the conduct of each of the Defendants was unlawful" and "[a]ll Defendants knowingly gave substantial assistance or encouragement to each other in carrying out the unlawful interception, use, dissemination, and disclosure of the illegally intercepted communications." Compl. ¶¶ 70-71. "[U]nder California law, **a direct aider and abettor with the requisite mental state is equally guilty of committing the intended crime as the direct perpetrator**." *People v. Wilson*, 56 Cal. App. 5th 128, 168 (2020) (emphasis added). See also *Williams v. Matteson*, 2020 U.S. Dist. LEXIS 217216, at *32 (E.D. Cal. Nov. 19, 2020) ("Under California law, a person who either directly commits or aids and abets an offense is guilty as a principal.").

Defendants' exact argument—that they are immune from liability because they were mere co-conspirators and abettors who did not have their fingers on the "record" button when the telephone call was wiretapped—was directly rejected in another case before Your Honor. Specifically, a plaintiff alleged that on "August 18, 2009, defendants O'Keefe and Giles visited the ACORN office" and "O'Keefe and Giles conspired to secretly video and audio tape Vera at the ACORN office." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 961 (S.D. Cal. 2011). Defendant Giles moved to dismiss, arguing that "because the complaint alleges that 'O'Keefe was wearing a hidden camera and recorded audio and video of the visit,' she cannot be liable under § 632." *Vera*, 791 F. Supp. 2d at 962-63. Like Defendants here, Giles asserted that

> § 637.2 only provides a right to recover damages against O'Keefe because he is the "person who committed the violation" by making the recording. Thus, Giles contends "[s]ection 632 only punishes the "person who . . . records . . . the confidential communication."

*Vera*, 791 F. Supp. 2d at 963. Giles further argued that

the test and structure of § 632 reflects the intent to preclude actions against persons who assist in the recording of a confidential conversation but who do not carry out the recording with an electronic device.

*Vera*, 791 F. Supp. 2d at 963.

The Court rejected the defense, finding Cal. Penal Code § 31 provides:

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, **or aid and abet in its commission**, or not being present, **have advised and encouraged its commission, . . . are principals in any crime so committed**.

*Vera*, 791 F. Supp. 2d at 963 (emphasis in original). Thus, the Court held

Although California may enact a particular statute or define a particular cause of action to preclude or include aider and abettor and conspirator liability, there is no exclusion to the applicability of Penal Code § 31 with respect to Penal Code § 632. Accordingly, the Court finds that plaintiff has stated a claim against Giles as a principal in violating Penal Code § 632 and allowing for recovery of damages under § 637.2.

The Court further agrees with plaintiff that a plain reading of the language of the statute is broader than defendant contends. To record a confidential communication can mean, in the ordinary sense of the term, to cause a confidential communication to be recorded.

*Vera*, 791 F. Supp. 2d at 963-64. The Court further held

The plain language of § 632 is directed to the surreptitious recording of confidential communications and not the manner or method of recording the conversation. Given the ordinary meaning of the term "record", Giles's alleged participation with co-defendant O'Keefe in the recording of the conversation with plaintiff is sufficient for liability under § 632 and for obtaining damages under § 637.2.

*Vera*, 791 F. Supp. 2d at 964. Thus, Defendants are wrong that they cannot be held liable under these same statutes because it was Voigt who hit the "record" button.

Defendants further assert that "Section 631 (prohibiting unauthorized wiretaps) solely "applies to third party actions and therefore, as a party to the call, [Voigt] cannot be liable as a matter of law." Mot. at 18 (citing *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012)). Defendants' reliance on *Powell* is misplaced. In *Powell*, the "basis for" the plaintiff's "eavesdropping claim" was

1   a call that occurred on June 8, 2008, around 3:00 p.m., when Papworth called
2   plaintiff. (ECF 117 ¶¶ 2, 13.) Both Papworth and Brian Kline ("Kline") were
3   officers with UP at the time of the June 8, 2008 call. (ECF 117 ¶ 1.) Papworth
4   initiated that call to discuss plaintiff's physical capabilities and the possibility that
5   plaintiff could be a yardmaster. (ECF 87-2 ¶ 13.) Kline provided Papworth with
6   questions to ask of plaintiff. (ECF 87-2 ¶ 14.) Papworth testified to the contents of
    his call with plaintiff at the investigative hearing. Kline did not testify. In
7   Papworth's testimony at the investigative hearing, he makes clear he thought Kline
    was on the line when he spoke with plaintiff.

8   *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 953 (E.D. Cal. 2012). Thus, the

9   plaintiff, a party to a telephone call who was aware of the defendant's presence on the call,

10  brought an eavesdropping claim against the defendant, **who initiated the same call**. As the

11  *Powell* court aptly noted, "'[i]t is never a secret to one party to a conversation that the other

12  party is listening to the conversation; only a third party can listen secretly to a private

13  conversation.'" *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012)

14  (quoting *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 900 (1975)).

15  ## IX.   CAL. CIV. CODE § 1714.10 IS A STATE PROCEDURAL RULE.

16          Defendants contend that Plaintiffs' claim for aiding and abetting fails because "Cal.

17  Civil Code § 1714.10 requires that "[a] party must establish a reasonable probability of

18  prevailing before pursuing a cause of action against an attorney for a civil conspiracy with

19  his or her client arising from any attempt to contest or compromise a claim or dispute." Mot.

20  at 22-23. The argument fails, because under the *Erie* doctrine, this rule of state court

21  procedure has no application before this Court.

22          Once again, Defendants fail to cite directly on point, published authority from this

23  district, in this case a decision by Judge Anello expressly finding this rule does not apply in

24  federal court. "Cal. Civil Code § 1714.10 is a California provision that requires a plaintiff

25  to obtain an order from a court before asserting that an attorney engaged in a conspiracy

26  with his or her client." *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1182 (S.D. Cal.

27  2010). The statute is "procedural in nature." *Id*.

28          In determining whether a particular statute is procedural rather than substantive in

19

1
2
nature, courts look to whether the statute "really regulates procedure," namely, "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them."

3
4
*Steel*, 726 F. Supp. at 1182. "Accordingly, because the Court finds that Cal. Civ. Code § 1714.10 is procedural in nature, the Court declines to apply it here." *Id.*

5
6
## X. PLAINTIFF'S CLAIMS DO NOT IMPERMISSIBLY INVADE THE ATTORNEY-CLIENT RELATIONSHIP.

7
8
9
10
11
12
13
14
15
Citing *Dietz v. Meisenheimer & Herron,* 177 Cal. App. 4th 771, 792 (2009), Defendants argue that Plaintiffs claims should be dismissed because they seek to impermissibly invade the attorney-client relationship. Mot. at 24-25. In *Dietz*, the defendant argued that "the trial court erred as a matter of law in balancing Dietz's interest in prosecuting the action against Meisenheimer's inability to defend itself without violating its ethical duties." *Dietz v. Meisenheimer & Herron*, 177 Cal. App. 4th 771, 790 (2009). The plaintiff claimed that "pursuant to *Solin*, due process requires dismissal if the lawyer-defendant would be prevented by his duties to his clients from presenting any of the relevant evidence that may bolster the defense." *Id.* at 792.

16
17
18
19
20
21
22
The Court of Appeal held

Meisenheimer vastly overstates the breadth of the holding in *Solin*. If dismissal were required whenever a lawyer's ethical duties prevented the lawyer from presenting evidence having any relevance to the action, without respect to the materiality of the evidence, the "drastic action" of dismissal would become commonplace. (*General Dynamics, supra*, 7 Cal.4th at p. 1190.) Nothing in *Solin*, nor any other authority of which we are aware, requires such a result.

*Dietz*, 177 Cal. App. 4th at 792. Rather,

23
24
25
26
there are at least four factors that a court must consider, under *General Dynamics* and its progeny, before a court may dismiss a case on the ground that a defendant attorney's due process right to present a defense would be violated by the defendant's inability to disclose a client's confidential information if the action were allowed to proceed.

27
28
*Id.* "First, the evidence at issue must be the client's confidential information, and the client must be insisting that the information remain confidential." *Id.* Second, the "confidential

20

1  information" must be "highly material to the defendants' defenses." *Id.*

2      Third, before dismissing a case on due process grounds, the trial court must
3      determine whether it is able to effectively use "ad hoc measures from [its] equitable
4      arsenal," including techniques such as "sealing and protective orders, limited
5      admissibility of evidence, orders restricting the use of testimony in successive
6      proceedings, and, where appropriate, in camera proceedings," so as to permit the
    action to proceed.

7  *Dietz*, 177 Cal. App. 4th at 793. Finally, the

8      trial court should consider whether it would be "fundamentally unfair" to allow the
9      action to proceed. (Solin, supra, 89 Cal.App.4th at p. 463.) Fundamental fairness in
10      this context is an extension of the principle that, "[t]he privilege which protects
    attorney-client communications may not be used both as a sword and a shield."

11  *Id.* See also *Reilly v. Greenwald & Hoffman, LLP*, 196 Cal. App. 4th 891, 904 (2011) ("In
12  *Dietz*, we concluded there are several factors a court must consider, under *General*
13  *Dynamics Corp.* . . . and its progeny, before it may dismiss a case on the ground that a
14  defendant attorney's due process right to present a defense would be violated."),

15         Analyzing these factors, the Court of Appeal held

16      *General Dynamics* and its progeny thus support the notion that a court may take the
17      extraordinary step of dismissing a plaintiff's claim on the ground that an attorney
18      defendant's due process right to present a defense is compromised by the
    defendant's inability to present confidential information in support of that defense
19      only in the rarest of cases, after the court has considered all of the factors discussed
20      above. On this basis, we reject Meisenheimer's contention that due process requires
21      dismissal if an attorney defendant would be prevented by ethical duties from
    presenting "any of the relevant evidence that may bolster the defense."

22  *Dietz*, 177 Cal. App. 4th at 794.

23         Here, Defendants request that the Court take such an "extraordinary step" without
24  even mentioning, much less showing the four-part test is met. However, a court may
25  properly dismiss on such grounds, "**only in the rarest of cases**," and "**after the court has**
26  **considered all of the factors discussed above**." *Id.* (emphasis added).

27         In *Richter v. Ausmus*, a defendant argued that "Richter's claim against him as an
28  attorney hired by Oakland is barred under 'the *McDermott* doctrine.'" *Richter v. Ausmus*,

2023 U.S. Dist. LEXIS 61308, at \*17 (N.D. Cal. Apr. 6, 2023). Judge Orrick rejected the argument because

> before dismissing a claim under this doctrine a trial court must consider "the interests of a plaintiff in bringing a potentially meritorious claim that is not premised on confidential information, in the course of determining whether a defendant's right to present a defense premised on confidential information requires dismissal of the claim." *Dietz v. Meisenheimer & Herron*, 177 Cal.App.4th 771, 791, 99 Cal.Rptr.3d 464, 480 (Cal. App. 4 Dist., 2009) (emphasis in original). What, if any, information possessed by Stanfield might be protected by the attorney-client interest is unclear. . . . In his Supplemental Brief, Stanfield fails to identify or address the four factors that courts weigh to determine whether a case is barred under *McDermott*. I cannot dismiss Richter's claims against Stanfield on this basis at this juncture.

*Richter*, 2023 U.S. Dist. LEXIS 61308, at \*17-18. Here, too, Defendants failure to address the relevant standard is fatal to their argument.

Dismissal is especially inappropriate at this stage because the Complaint is taken as true and alleges facts that would support application of crime-fraud exception to privilege. See *State Farm Fire & Cas. Co. v. Superior Court*, 54 Cal. App. 4th 625, 643 (1997); *BP Alaska Expl., Inc. v. Superior Court*, 199 Cal. App. 3d 1240, 1262 (1988)).

## XI.   **CONCLUSION**

Family law attorneys, with a disturbing frequency, encourage their clients to make illegal recordings of current and former romantic partners. When they are caught doing so, they should be prosecuted, and sometimes are. In *Gunter v. Virginia State Bar*, 238 Va. 617 (1989), the Supreme Court of Virginia upheld the suspension of the license of an attorney who advised a client to record the telephone calls of his spouse and then used them in Court. In *United States v. Wuliger*, 981 F.2d 1497 (6th Cir. 1992), a divorce attorney was convicted of three criminal offenses relating to his use of recordings his client made of the client's spouse's telephone calls, though the convictions were reversed for and remanded for retrial because of an error in the jury instructions.

Indeed, when the federal anti-wiretap act was passed, it was in a large part targeted

22

1    at the common practice, seen here, of family-law attorneys procuring their clients to record
2    the conversations of their spouses. As the Ninth Circuit held earlier this year:

> **The legislative history of the Wiretap Act makes clear that Congress intended it to apply to domestic relations disputes. Congress knew that divorcing spouses were increasingly using electronic surveillance techniques to gain advantage in marital disputes and, when drafting the Act, viewed interceptions in this context as an area of particular concern.**

*Pyankovska v. Abid*, 65 F.4th 1067, 1078 (9th Cir. 2023) (agreeing with district court that "any state litigation privilege to submit the illegal transcripts did not trump Jones's federal obligations under the Wiretap Act")

       For the reasons stated herein, Defendants' Motion should be denied in its entirety. To the extent that finds Plaintiff's Complaint deficient in any way, Plaintiff respectfully requests leave to amend.


DATED: July 3, 2023                Respectfully Submitted,

                                    /s/ Gregory S. Weston
                                    GREGORY S. WESTON
                                    1405 Morena Blvd., Suite 201
                                    San Diego, CA 92110
                                    Telephone:   (619) 798-2006

                                    **Plaintiff**