GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006

**Plaintiff**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

GREGORY WESTON,

          Plaintiff,

      v.

ELIZABETH LEFITI, MINELLA
LAW GROUP, APC, and KATHY
MINELLA,

         Defendants.

Case No: 3:23-cv-00896-L-DDL

**PLAINTIFF'S OPPOSITION TO (1) MOTION TO DISMISS FIRST AMENDED COMPLAINT AND (2) REQUEST FOR JUDICIAL NOTICE**

District Judge: The Hon. M. James Lorenz
Date: September 11, 2023
Time: 10:30 a.m.
Location: Courtroom 5B

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II.  THE *NOERR-PENNINGTON* DOCTRINE DOES NOT APPLY. .......................... 1

III.  VOIGT'S ONE-PARTY CONSENT DOES NOT BAR THE CLAIMS. ................ 4

IV.  PLAINTIFF ALLEGES CRIMINAL AND TORTIOUS INTENT. ...................... 4

V.  DEFENDANTS' MASSIVE REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED. ............................................................................................. 6

VI.  THE FAC SUFFICIENTLY ALLEGES CRIMINAL AND TORTIOUS INTENT INDEPENDENT OF THE RECORDING. ............................................. 10

VII.  DEFENDANTS' "SECONDARY LIABILITY" ARGUMENT FAILS. ............... 15

VIII.  PLAINTIFF'S DISCLOSURE CLAIMS ARE MERITORIOUS. ...................... 17

IX.  PLAINTIFF'S CLAIMS DO NOT IMPERMISSIBLY INVADE THE ATTORNEY-CLIENT RELATIONSHIP. ............................................. 21

X.  CONCLUSION .................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**

*Anaya v. CDCR,*
    2016 U.S. Dist. LEXIS 129212 (E.D. Cal. Sep. 20, 2016) .......................................10

*B&G Foods N. Am., Inc. v. Embry,*
    29 F.4th 527 (9th Cir. 2022) ..........................................................................2

*BP Alaska Expl., Inc. v. Superior Court,*
    199 Cal. App. 3d 1240 (1988) .......................................................................23

*Caro v. Weintraub,*
    618 F.3d 94 (2d Cir. 2010) .....................................................................13, 15

*Celebrity Chefs Tour, Ltd. Liab. Co. v. Macy's, Inc.,*
    16 F. Supp. 3d 1141 (S.D. Cal. 2014) ..............................................................8

*Culbertson v. Culbertson,*
    143 F.3d 825 (4th Cir. 1998) ........................................................................19

*Deteresa v. ABC,*
    121 F.3d 460 (9th Cir. 1997) .....................................................................14, 15

*Dietz v. Meisenheimer & Herron,*
    177 Cal. App. 4th 771 (2009) .............................................................21, 22, 23

*Gonzalez v. Cal. Highway Patrol,*
    2021 U.S. Dist. LEXIS 144232 (E.D. Cal. Aug. 2, 2021) .......................................10

*Gunter v. Virginia State Bar,*
    238 Va. 617 (1989) ...................................................................................24

*Haw. Reg'l Council of Carpenters v. Yoshimura,*
    2016 U.S. Dist. LEXIS 123458 (D. Haw. Sep. 12, 2016)........................................15

*Imperium Ins. Co. v. Unigard Ins. Co.,*
    16 F. Supp. 3d 1104 (E.D. Cal. 2014) ..............................................................8

iii

*In re L.J.*,
    89 Cal. App. 5th 741 (2023) ...................................................................................... 19

*Luis v. Zhang*,
    33 F.3d 619 (6th Cir. 2016) ................................................................................... 9, 10

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986) ................................................................................. 6, 20

*Naruto v. Slater*,
    888 F.3d 418 (9th Cir. 2018) ........................................................................... 6, 12, 20

*Pacific Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*,
    2008 U.S. Dist. LEXIS 31462 (E.D. Cal. Apr. 16, 2008) ........................................ 8

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ................................................................................. 14

*Ponomarenko v. Shapiro*,
    287 F. Supp. 3d 816 (N.D. Cal. 2018) ................................................................. 6, 20

*Portland Marche, LLC v. Fannie Mae*,
    2022 U.S. Dist. LEXIS 148902 (D. Or. Aug. 19, 2022) ......................................... 9

*Pyankovska v. Abid*,
    65 F.4th 1067 (9th Cir. 2023) ........................................................................... 2, 3, 24

*Reilly v. Greenwald & Hoffman, LLP*,
    196 Cal. App. 4th 891 (2011) ................................................................................. 22

*Richter v. Ausmus*,
    2023 U.S. Dist. LEXIS 61308 (N.D. Cal. Apr. 6, 2023) ........................................ 23

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................. 12, 20

*State Farm Fire & Cas. Co. v. Superior Court*,
    54 Cal. App. 4th 625 (1997) ................................................................................... 23

iv

*Thomas v. Intercontinental Hotels Grp.*,
    2022 U.S. Dist. LEXIS 100947 (C.D. Cal. Apr. 14, 2022) ........................................8

*United States ex rel. Lee v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ...............................................................................7

*United States v. Christensen*,
    624 F. App'x 466 (9th Cir. 2015) ................................................................12, 13

*United States v. Echavarria-Olarte*,
    904 F.2d 1391 (9th Cir. 1990) ......................................................................18, 19

*United States v. Koziol*,
    993 F.3d 1160 (9th Cir. 2021) ..............................................................................2

*United States v. Wuliger*,
    981 F.2d 1497 (6th Cir. 1992) .............................................................................24

*Vera v. O'Keefe*,
    791 F. Supp. 2d 959 (S.D. Cal. 2011) ..........................................................16, 17

*Walker v. Life Ins. Co. of the Sw.*,
    953 F.3d 624 (9th Cir. 2020) ...............................................................................8

## STATUTES

18 U.S.C. § 2511(2)(d) .................................................................................................4

Cal. Penal Code § 637 ..................................................................................................6

v

## I.   **INTRODUCTION**

> The legislative history of the Wiretap Act makes clear that Congress intended it to apply to domestic relations disputes. Congress knew that divorcing spouses were increasingly using electronic surveillance techniques to gain advantage in marital disputes and, when drafting the Act, viewed interceptions in this context as an area of particular concern.

*Pyankovska v. Abid*, 65 F.4th 1067, 1078 (9th Cir. 2023).

This action alleges violations of federal anti-wiretapping statutes based on allegations that Defendants, together with non-party Hannah Voigt, planned to secretly record a telephone call with Plaintiff Weston where Voigt asked Plaintiff a scripted series of questions. After creating the illegal recording of a private telephone call, Defendants and Voigt distributed *an edited version* of the telephone call recording to (1) their staff and vendors, (2) Weston's mother, (3) Weston's father, and (4) Weston's co-worker.

As soon as Weston became aware that Defendants were distributing the illegal recording of him, he wrote to them demanding that they desist. He informed them that (1) he did not consent to the recording, (2) the recording was inadmissible as evidence, and (3) the recording was illegal. Defendants ignored Plaintiff Weston's request and continued to possess and distribute the recording. Only after Defendants' refusal to stop distributing the recording did Plaintiff bring this suit.

The motion to dismiss should be denied in its entirety. Unfortunately, it is fairly common for family law attorneys like Defendants to make and use illegal recordings of their adversaries. It is so common that there is ample case law involving essentially identical facts as those seen here and addressing the exact defenses Defendants make in their motion. Rather than address these cases, Defendants have largely chosen to quibble with or ignore them, or focus on cases involving recordings made by journalists, who enjoy a special defense in California.

## II.   **THE *NOERR-PENNINGTON* DOCTRINE DOES NOT APPLY.**

Defendants contend Plaintiffs' claims are barred by the *Noerr-Pennington* doctrine, which is "a generic rule of statutory construction" that courts should "avoid burdening

1

conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539-40 (9th Cir. 2022). The doctrine, "derived from two Supreme Court cases, requires courts to construe ambiguous statutes to avoid burdening petitioning activity protected by the First Amendment." *Pyankovska*, 65 F.4th at 1071 n.1  (citing *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021)).

Without addressing the *Pyankovska* standard, Defendants contend that the doctrine applies here because "Plaintiff's claims against Defendants are exclusively based on Defendants' alleged conduct in representing their client Voigt in the Family Law Action." Mot. at 21. The argument fails at the outset because it contradicts the complaint. Moreover, even if this were true, it fails to address the test in *Pyankovska*, which Defendants do not even mention. Specifically,

> the court asks: "(1) whether the lawsuit imposes a burden on petitioning rights," "(2) whether the alleged activities constitute protected petitioning activity," in other words, "neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions," and "(3) whether the statute at issue may be construed to [avoid] that burden. If the answer at each step is 'yes,' then a defendant's conduct is immunized under *Noerr-Pennington*."

*Pyankovska*, 65 F.4th at 1077 (quoting *B&G Foods N. Am., Inc.*, 29 F.4th at 535).

In *Pyanskovska*, the plaintiff sued her ex-husband and his attorney, John Jones, in a custody dispute "alleging federal and state wiretap violations." *Pyankovska*, 65 F.4th at 1071. The suit sought "to hold Jones liable in damages for disclosing illegally intercepted communications in the state court custody proceedings." *Pyankovska*, 65 F.4th at 1077. Jones, like Defendants here, argued that he was "immunized from liability by *the Noerr-Pennington* doctrine." *Id*. at 1075. The Ninth Circuit rejected the argument, as

> First, Pyankovska's lawsuit seeks to hold Jones liable in damages for disclosing illegally intercepted communications in the state court custody proceedings. But **Jones does not credibly argue that a successful damages action in federal court imposes an unconstitutional "burden" on the state court litigation**. The illegally obtained communications found their way into state court where the evidence was

reviewed by the court-appointed psychologist and by the court and Abid prevailed: he won the custody litigation. In light of Abid's victory, it is hard for Jones credibly to argue that the litigation of the custody motion was "burdened."

Second, *Noerr-Pennington* "[i]mmunity . . . applies only to what may fairly be described as petitions . . . ." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 1184 (9th Cir. 2005). We have explained that "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept." *Id.* Under this definition, Jones and Abid were entitled to participate and did participate in petitioning activity. But once they were in court, they were obligated to play by the rules applicable to all litigants. Federal and state rules limit in enumerable ways what litigants can say and do. . . The sections of the Federal Act that prohibit the disclosure of evidence obtained in violation of the Federal Act and provide that "no part of the contents of [any illegally intercepted] communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court" are similar restrictions that apply in both state and federal courts. 18 U.S.C. § 2515.

*Pyankovska*, 65 F.4th at 1077 (emphasis added). Thus, the Ninth Circuit concluded that the attorney's "right to petition in a case with no public significance does not grant Jones immunity from the penalties prescribed by Congress for those who violate the Wiretap Act." *Id.* at 1077. Defendants "were not at liberty to set their own rules. Jones was free to file and argue the custody motion—i.e., to petition—but he was not free to support that motion with illegal evidence." *Pyankovska*, 65 F.4th at 1077.  Defendants contend that the

> *Pyankovska* case is distinguishable and not controlling here, given: 1) it is undisputed each of the alleged disclosures were undertaken with the consent of Defendants' client Voigt, a party to the conversation; 2) the alleged disclosures by Defendants were limited to evidence in opposition to Plaintiff's DVRO request to impeach his verified statements […] 4) Plaintiff has failed to sufficiently allege either Defendants' knowledge of any purportedly unlawful interception or any supposedly improper disclosure by Defendants.

Mot. at 21-22.

This argument is unavailing. First, without seeing this opposition, Defendants' aggressive claims to a large set of "undisputed" facts are improper. In fact, Plaintiff does dispute the facts in Defendants' lengthy counter-narrative that makes up much of their motion to dismiss. Moreover, Defendants are wrong Plaintiff failed to allege knowing wrongful acts is simply wrong, as the FAC repeatedly makes such allegations. Finally, *none* of these "undisputed" counter-allegations Defendants make in their motion are actually relevant to *Noerr-Pennington*. Simply put, *Pyankovska* is directly on point, and Defendants attempt to claim it supposed is "not controlling" by asserting there are "undisputed" facts that Plaintiff does dispute, and which are not in the FAC, fails.

## III.   VOIGT'S ONE-PARTY CONSENT DOES NOT BAR THE CLAIMS.

Defendants contend Plaintiffs' "Federal Wiretap Act claim fails as a matter of law, because the statute does not apply where, as here, the person who made the recording is a party to the communication." Mot. at 13 (citing 18 U.S.C. § 2511(2)(d)). This misstates the federal statute, which provides that:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State*.

18 U.S.C. § 2511(2)(d) (emphasis added). Here, the exception applies because the FAC alleges the recording was made "for the purpose of committing" both "tortious" and "criminal" acts "in violation of the Constitution of the laws of [] any state."

## IV.   PLAINTIFF ALLEGES CRIMINAL AND TORTIOUS PURPOSE.

Defendants argue that 18 U.S.C. § 2511(2)(d)'s exception is inapplicable because "the focus" "is upon whether the purpose for the interception–its intended use–was criminal or tortious." Mot. at 14. Defendants then counter-allege that Voigt made the recording "for the proper purpose of protecting Voigt by memorializing the parties' agreement regarding her return to Wisconsin with [their son] H.V." Mot. at 16. Plaintiff hopes the Court notes,

at the outset, just how audacious the argument Defendants ask the Court to adopt is: that it is a "proper purpose" to instruct a family law client to make a secret recording of a telephone call with her romantic partner and co-parent for the purpose of "memorializing the parties' agreement." Even if Defendants' audacious contention were true that this is a "proper purpose" for secretly recording and transcribing a telephone call with a romantic partner, it still would not help them, *because this is not what the FAC alleges*.

Indeed, the FAC does *not* allege that the recording was made for such a "proper purpose." Rather, Plaintiff alleges that Defendants, "scripted out with Voigt specifically what she should try to get Plaintiff to say. **They did this with an intent to invade Plaintiff's privacy, unlawfully extort money from him, to cause Plaintiff emotional distress, and to cause Plaintiff adverse publicity to interfere with current and prospective business relationships**." FAC ¶ 11 (emphasis added). Defendants did so "with actual knowledge that doing so would be illegal." FAC ¶ 10. Further, "Defendants knew. . . that Voigt could never use the illegal recording in Court. They also knew that making the illegal recording would expose Voigt to civil and criminal liability." FAC ¶ 12. Intentionally exposing someone to civil and criminal liability is also tortious.

Contrary to Defendants' assertion that the recording was made for a proper purpose,

Defendants, in their scheme to record a private conversation between Voigt and Weston, share the recording with Weston's family and co-worker, transcribe the recording, and repeatedly lodge the recording and transcript in San Diego Superior Court, intended to invade Weston's privacy, embarrass Weston, and inflict extreme emotional distress on him.

FAC ¶ 24. Defendants thus "intentionally intruded upon the seclusion of Weston." FAC ¶ 37. Such acts "constituted an invasion of privacy pursuant to California law." FAC ¶ 25.

Additionally, Pursuant to Cal. Penal Code § 637,

Every person not a party to a telegraphic or telephonic communication who willfully discloses the contents of a telegraphic or telephonic message, or any part thereof, addressed to another person, without the permission of that person, unless directed so to do by the lawful order of a court, is punishable by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not

exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both that fine and imprisonment.

Here,

"[A]ll Defendants repeatedly violated Cal. Penal Code § 637" when they (1) unlawfully record[ed] Weston, (2) air[ed] the contents of Weston's private, intimate conversation to Weston's family and co-worker, and (3) place[d] the recording and a transcript of the recording in the public record.

FAC ¶ 28. The FAC further alleges, ¶ 59, that

Defendants' interception, dissemination, and disclosure of electronic communications sent between Plaintiff and Voigt was committed with criminal [intent to violate] California privacy law. Further, Defendants' conduct described herein was maliciously intended to, and did, cause Weston severe mental and emotional distress.

In arguing that the recording was made for a proper purpose, Defendants ignore Weston's well-pleaded allegations. However, on "a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 826 (N.D. Cal. 2018) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Further, at this stage, "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018).

## V.   DEFENDANTS' MASSIVE, 33-DOCUMENT REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED.

Defendants request that the Court take judicial notice of 33 exhibits spanning 280 pages. Docs. 20-2 and 20-3. All are documents supposedly filed in Weston's 2022 child custody petition. Citing *Imperium Ins. Co. v. Unigard Ins. Co.*, 16 F. Supp. 3d 1104, 1108, n.1 (E.D. Cal. 2014) and *Pacific Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 2008 U.S. Dist. LEXIS 31462, at *83-84 (E.D. Cal. Apr. 16, 2008), Defendants argue that "the court may take judicial notice of the allegations and claims asserted by the parties in court filings." Doc. 20-2 at 2.

In an effort to contradict Plaintiff's well-pleaded allegations and argue that the

recording was made for a proper purpose, Defendants submit an email from Voigt to Weston, an alleged "transcript" of the recorded call whose completeness and accuracy Plaintiff strongly disputes, and multiple filings that Voigt submitted in the underlying family law action. Mot. at 15-16. They argue that "[t]his Court may consider such 'unattached evidence on which the complaint necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." Mot. at 16-17 (quoting *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011)).

Plaintiff agrees this is the correct standard, but none of the three required elements is met. First, while the FAC, as background information, makes glancing references to Plaintiff's custody petition, it references no specific documents filed in it other than the transcript of the secretly recording telephone call. Second, Defendants do not even attempt to argue each of their 33 documents spanning 280 pages are "central to the Plaintiff's claim." Indeed, 30 of 33 RJN documents are *never cited in the complaint at all* and *only cited by Defendants once each, in their background section*. Third, a party *does* dispute their authenticity. With respect to the only RJN document actually mentioned in the complaint, the purported transcript of the secretly-recorded call, Plaintiff does dispute the authenticity. Specifically, in his ex parte motion seeking discovery, which was denied without prejudice, Plaintiff complained:

> In this case involving an illegal recording, he does not even have the original version of the recording. Rather, he only has the file that was embarrassingly sent to his family and coworker named "trim.35474415-113B-45A5-9EEC-9FEE8F5035D6.MOV" indicating that it was "trimmed" down from its original length using Apple software. This is just one example of evidence relevant to the motion that is in Defendants' possession.

Doc. 8 at 9. Nor does Plaintiff concede the authenticity of all the other 278 pages of RJN documents attached to the motion to dismiss.

Defendants' RJN also misstates the law. In *Imperium Ins.*, the parties "**jointly**" requested judicial notice of a complaint, such that there was no factor in dispute. *Imperium*

7

*Ins. Co. v. Unigard Ins. Co.*, 16 F. Supp. 3d 1104, 1108 n.1 (E.D. Cal. 2014)(emphasis added). In *Pacific Coast*, the court "denied" the request "without prejudice," other than "the fact that each of the three declarations was filed." *Pacific Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, 2008 U.S. Dist. LEXIS 31462, at *84 (E.D. Cal. Apr. 16, 2008).

Further, Defendants introduce filings from the family law action for the purported truth of their contents. Mot. at 16 (quoting Ex. 14, Voigt's Declaration in Opposition to Cross-DVRO and Ex. 15, Exhibit A to Voigt's Notice of Lodgment, and Ex. 22, Weston's Declaration in Support of Request for Sanctions and Attorney Fees). They wish the Court to then draw inferences against Plaintiff: that their purpose in secretly recording the call and then widely distributing it and publically filing it was somehow a "proper purpose" of "memorializing" a custody agreement.

However, a "court can take notice of the existence of pleadings, but not the truth of the facts recited therein." *Walker v. Life Ins. Co. of the SW.*, 953 F.3d 624, 637 (9th Cir. 2020). See also *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001); *Celebrity Chefs Tour, Ltd. Liab. Co. v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1147 (S.D. Cal. 2014) ("While a court may take judicial notice of the existence of matters of public record, such as a prior order or decision, it should not take notice of the truth of the facts cited therein."); *Thomas v. Intercontinental Hotels Grp.*, 2022 U.S. Dist. LEXIS 100947, at *12 n.2 (C.D. Cal. Apr. 14, 2022) (denying request for judicial notice and noting that "a court can take notice of the existence of pleadings, but not the truth of the facts stated"). Here, Defendants repeatedly and improperly request that the Court take judicial notice of purported facts contained within their exhibits to support a complicated counter-narrative that the secret recording of a telephone call and its transcription and distribution was completely legal and proper because it was to "memorialize" a custody agreement.

Defendants rely on an exhibit from the family law action containing an email from Voigt to Weston's co-worker as Exhibit 14. To the extent that Defendants rely on the email to prove Voigt's or Defendants' intent or purpose in creating the recording, the e-mail is inadmissible hearsay. See *Portland Marche, LLC v. Fannie Mae*, 2022 U.S. Dist. LEXIS

148902, at *12 (D. Or. Aug. 19, 2022) ("Hearsay means [an out-of-court] statement that...a party offers in evidence to prove the truth of the matter asserted in the statement."). Further, if the email was not offered to show such intent or purpose, it is irrelevant.

Further, with respect to the transcript attached as Exhibit 15, it is clearly incomplete. The transcript of a cordial telephone call abruptly ends while Voigt is in the middle of a sentence, and neither party to the call makes any mention of ending the call or says goodbye. See Mot. at 16 and Doc. 20-3, Ex. 15. Though the transcript is clearly incomplete, and Weston does not possess a full copy of the recording despite requesting it, Defendants offer it as evidence to which the Court should infer "proper" intent in contradiction to the FAC..

In *Luis v. Zhang*, a husband "secretly install[ed] a product known as WebWatcher on the computer used by [his wife] in order to monitor her communications." *Luis v. Zhang*, 833 F.3d 619, 623 (6th Cir. 2016). The plaintiff alleged that "WebWatcher and its manufacturer, Awareness Technologies, Inc., surreptitiously intercepted the emails, instant messages, and other communications that were sent between Luis and Catherine. Awareness then allegedly disclosed the communications to Joseph, who used them as leverage to divorce Catherine on favorable terms." *Id.* The defendant, like Defendants here, sought to resist the Sixth Circuit's conclusion that an unlawful intercept occurred by "relying on an affidavit submitted by its CEO, Brad Miller. This affidavit was executed in August 2012 and is attached to Awareness's motion to dismiss." *Luis*, 833 F.3d at 632. The affidavit claimed that

> WebWatcher "records various activities . . . such as e-mails sent and received, websites visited, keystrokes typed and transcripts of online chats." This recorded content is then "sent to an online account," from which a WebWatcher user may access the material at a later date. According to Miller, a WebWatcher user "cannot view communications at the time a communication is transmitted."
> This purported lack of real-time monitoring is important, Awareness maintains, because it allegedly shows that any acquisition of communications is not contemporaneous with the communications' transmission. Awareness thus urges that Miller's affidavit be read as firmly establishing that no contemporaneous acquisition—and hence no intercept—occurred in this case.

9

1  *Luis*, 833 F.3d at 632. The court rejected the argument, as

2  > Procedurally, Awareness is not entitled to rely on affidavits at this stage of the
3  > case. A court evaluating a motion to dismiss may, as noted above, consider "the
   > complaint and any exhibits attached thereto, public records, items appearing in
4  > the record of the case and exhibits attached to defendant's motion to dismiss so
5  > long as they are referred to in the complaint and are central to the claims
6  > contained therein." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir.
   > 2015) (alterations and internal quotation marks omitted). Miller's affidavit,
7  > although attached to Awareness's motion to dismiss, is plainly not "referred to
8  > in the complaint." The affidavit therefore does not fall within the categories of
9  > documents that may be considered at this point in the litigation.

10  *Luis*, 833 F.3d at 632.[1]

11  ## VI.  THE FAC SUFFICIENTLY ALLEGES CRIMINAL AND TORTIOUS
12  ## INTENT INDEPENDENT OF THE RECORDING.

13      Defendants contend Plaintiffs' claims fail because, they assert, Weston cannot point

14  to any criminal or tortious purpose independent from the alleged criminal purpose of

15  creating the recording itself. Mot. at 18-19. This ignores Plaintiff's well-pleaded allegations.

16  For example, he alleges "Defendants scripted out with Voigt specifically what she should

17  try to get Plaintiff to say" while secretly recording his phone call "with an intent to invade

18  Plaintiff's privacy, unlawfully extort money from him, to cause Plaintiff emotional distress,

19

20  _____

21  [1] On top of their 280-page RJN, Defendants also want to add the initial complaint to the mix,
22  and argue the allegations in the initial complaint, and argue Plaintiff strategically deleted
    allegations. But Plaintiff is the master of his complaint, and amended it as instructed by the
23  Court. This included the dismissal of the state-law claims and reducing its length from 12 to
24  10 pages and from 81 to 61 paragraphs. Further once "an amended complaint is filed, the
    original complaint no longer serves any function in the case." *Anaya v. CDCR*, 2016 U.S.
25  Dist. LEXIS 129212, at *20 (E.D. Cal. Sep. 20, 2016). *Accord*, *Gonzalez v. Cal. Highway
26  Patrol*,  2021 U.S. Dist. LEXIS 144232, at *24 n.8 (E.D. Cal. Aug. 2, 2021)("Once plaintiff
    files an amended complaint, the original pleading no longer serves any function in the case.");
27  *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014) ("it is well-established
28  that an amended pleading supersedes the original pleading and renders it of no legal effect"
    so "the Court will not consider any facts in" it).

and to cause Plaintiff adverse publicity to interfere with current and prospective business relationships." FAC ¶¶ 10-11.

- "Defendants knew, when they told Voigt to record the call, that Voigt could never use the illegal recording in Court. They also knew that making the illegal recording would expose Voigt to civil and criminal liability." FAC ¶ 12.
- "Voigt, like Defendants, made the recording with the intent of violating Plaintiff's privacy, extortion of money, and inflicting emotional distress upon him." FAC ¶ 17.
- "The recording does not fall within any exception to state and federal wiretap rules, as it was not pursuant to a restraining order, Voigt was not seeking a restraining order, and it did not concern domestic violence or other violence. Rather, the call came amidst a series of friendly, sweet, and flirtatious communications between Voigt and Plaintiff." FAC ¶ 22.
- "Defendants conspired with each other and with Voigt to make the unlawful recording **for the criminal and tortious purposes of violating Plaintiff's civil right to privacy, and to inflict emotional distress on Plaintiff**." FAC ¶ 23 (emphasis added).
- "Defendants' intrusion upon Weston's seclusion was intentional and committed with the intent to inflict emotional distress on Weston." FAC ¶ 26.
- "all Defendants repeatedly violated Cal. Penal Code § 637" FAC ¶ 28.
- "Defendants' interception, dissemination, and disclosure of electronic communications sent between Plaintiff and Voigt was committed with criminal and/or tortious intent in that the conduct violated Cal. Penal Code §§ 632 and 637 as alleged herein and further constituted a violation of California privacy law. Further, Defendants' conduct described herein was maliciously intended to, and did, cause Weston severe mental and emotional distress." FAC ¶ 59.

Defendants shift between ignoring these allegations and arguing they don't match their own counter-narrative. However, at this stage, "'[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Further, Defendants' cited authority is unavailing. In *Sussman v. ABC*, the plaintiffs' claim failed because they "pointed to no state statute or caselaw indicating that it was tortious or illegal for ABC to air the tapings made by Lescht." *Sussman v. ABC*, 186 F.3d

1200, 1202 (9th Cir. 1999). This holding was based on the fact the "California Court of Appeal" had "recently emphasized that 'newsworthiness . . . is a complete bar to liability for publication of private facts and is evaluated with a high degree of deference to editorial judgment.'" *Sussman*, 186 F.3d at 1202 (quoting *Marich v. QRZ Media, Inc.*, 73 Cal. App. 4th 299 (Cal. Ct. App. 1999). Here, Defendants are not ABC News or a similar organization. Nor does the complaint allege that Defendants secretly recorded Plaintiff's telephone call because they thought it was newsworthy.

Here, in contrast, Plaintiff explicitly alleges that Defendants (1) violated Cal. Penal Code §§ 632 and 637 by recording the call and disseminating and using the transcript; (2) violated Weston's right to privacy under the California Constitution; and (3) Defendants made the "the unlawful recording for the criminal and tortious purposes of violating Plaintiff's civil right to privacy, and to inflict emotional distress on Plaintiff." FAC ¶¶ 10-13, 23-26, 59. See also FAC 17 ("Voigt, like Defendants, made the recording with the intent of violating Plaintiff's privacy, extortion of money, and inflicting emotional distress upon him."). Moreover, *Sussman* concerned a motion for summary judgment, so involved the Court weighing evidence submitted by the defendant journalists on their "newsworthiness" defense.

Defendants also cite and quote *U.S. v. Christensen*, Mot. at 18, but that opinion "is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3." *United States v. Christensen*, 624 F. App'x 466, 473 (9th Cir. 2015). Further, the decision reviews not a motion to dismiss like the one before this Court, but the question of exclusion of evidence at trial. The sentences immediately following Defendants' cited language state, "[m]oreover, even if the first recording was excluded on this fee collection theory, the remaining recordings would not have been excluded because Pellicano and Christensen did not discuss fees on them." *Christensen*, 624 F. App'x 466, 475-76.

Defendants' reliance on *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010), Mot. at 18, is also misplaced. "The only tort Caro assert[ed] in his complaint that could plausibly provide the intent necessary to bring the recording under the Wiretap Act is invasion of

privacy, a tort recognized under Connecticut common law." Under Connecticut law, "[n]othing more is required after the interception is made for liability to attach based on this tort." *Caro*, 618 F.3d at 101. The court noted that the "Congress authored the exception to the one-party consent rule to prevent abuses stemming from use of the recording not the mere act of recording." *Id.* Because the plaintiff failed to allege "tortious intent that relates to a tort independent from the act of recording itself," the claim failed. *Id.* In other words, for *Caro* to be on point here, Plaintiff would have had to limit his allegation of criminal and tortious intent to violation of the California state anti-wiretap law, which likewise imposing liability on the "the mere act of recording" and nothing more. In fact, Plaintiff alleges much more, and his allegations are parallel with those many other courts have found sufficient to satisfy the "criminal or tortious" requirement: extortion, infliction of emotional distress, violation of the right to privacy, and interference with business relationships.

Moreover, Weston only was aware of the recording because of the "abuses stemming from use of the recording" described in the complaint. FAC ¶¶ 10-11. See also FAC ¶ 17 ("Voigt, like Defendants, made the recording with the intent of violating Plaintiff's privacy, extortion of money, and inflicting emotional distress upon him.").

In *Deteresa v. ABC*, the Ninth Circuit noted that a party could prevail on a claim under the Federal Wiretap Act where, as here, they "come forward with evidence to show that" the offending party "taped the conversation for the purpose of violating Cal. Penal Code § 632, for the purpose of invading her privacy." *Deteresa v. ABC*, 121 F.3d 460, 467 n.4 (9th Cir. 1997).

As set forth above, Weston alleges that Defendants (1) violated Cal. Penal Code §§ 632 and 637 by recording the call and disseminating and using the transcript; violated Weston's right to privacy under the California Constitution; and (3) Defendants made the "the unlawful recording for the criminal and tortious purposes of violating Plaintiff's civil right to privacy, and to inflict emotional distress on Plaintiff." FAC ¶ 11. See also FAC 17 ("Voigt, like Defendants, made the recording with the intent of violating Plaintiff's privacy, extortion of money, and inflicting emotional distress upon him.").

13

1    Finally, Defendants' reliance on *Planned Parenthood Fed'n of Am., Inc. v. Newman*,
2    Mot. at 18, is also misplaced. First, the decision was a review of a judgment after a jury
3    trial. Second, the Plaintiff's tortious purpose was violation of civil RICO. But civil RICO
4    also requires another underlying offense and cannot stand alone. Thus, a circular situation
5    was created where the additional offense required for civil RICO was the violation of the
6    Wiretap Act, and the additional "criminal or tortious purpose" for the Wiretap Act was civil
7    RICO. The Ninth Circuit thus rejected this "reusing the same criminal purpose […] as both
8    the purpose of the civil RICO claim and the independent criminal or tortious purpose of §
9    2511(2)(d)." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th
10   Cir. 2022). "Planned Parenthood's argument is circular: according to Planned Parenthood,
11   the civil RICO conspiracy is furthered by the recordings, and the recordings themselves
12   further the ongoing civil RICO conspiracy." *Id*. There's simply no analogy to this case.

13   Here, Plaintiff specifically alleges that Defendants made the recording "with an intent
14   to invade Plaintiff's privacy, unlawfully extort money from him, to cause Plaintiff
15   emotional distress, and to cause Plaintiff adverse publicity to interfere with current and
16   prospective business relationships." FAC ¶¶ 10-11. He further alleges that "Defendants
17   conspired with each other and with Voigt to make the unlawful recording for the criminal
18   and tortious purposes of violating Plaintiff's civil right to privacy, and to inflict emotional
19   distress on Plaintiff." FAC ¶ 23. Moreover, Plaintiff alleges that "Voigt, like Defendants,
20   made the recording with the intent of violating Plaintiff's privacy, extortion of money, and
21   inflicting emotional distress upon him." FAC ¶ 17. See also FAC ¶ 24 (Defendants
22   "intended to invade Weston's privacy, embarrass Weston, and inflict extreme emotional
23   distress on him."); FAC ¶ 25-26 (Defendants' conduct "constituted an invasion of privacy
24   pursuant to the California law, and Defendants' "intrusion upon Weston's seclusion was
25   intentional and committed with the intent to inflict emotional distress on Weston.").

26   Plaintiff alleges that "Defendants' interception, dissemination, and disclosure of
27   electronic communications sent between Plaintiff and Voigt was committed with criminal
28   and/or tortious intent in that the conduct violated Cal. Penal Code §§ 632 and 637," FAC ¶

59, and that "all Defendants repeatedly violated Cal. Penal Code § 637." FAC ¶ 28.

In *Deteresa v. ABC*, the Ninth Circuit acknowledged that a party could prevail on a claim under the Federal Wiretap Act where, as here, they "come forward with evidence to show that" the offending party "taped the conversation for the purpose of violating Cal. Penal Code § 632, for the purpose of invading her privacy," or "for the purpose of defrauding her." *Deteresa v. ABC*, 121 F.3d 460, 467 n.4 (9th Cir. 1997). See also *Caro*, 618 F.3d at 101 ("Other circuits appear to have implicitly recognized invasion of privacy as a tort that could provide the necessary intent to bring a recording within the purview of the Wiretap Act."); *Haw. Reg'l Council of Carpenters v. Yoshimura*, 2016 U.S. Dist. LEXIS 123458, at *22-24 (D. Haw. Sep. 12, 2016) (breach of fiduciary duty and extortion satisfy "criminal or tortious" requirement).

Here, in addition to alleging that Defendants made the recording "with an intent to invade Plaintiff's privacy, unlawfully extort money from him, to cause Plaintiff emotional distress, and to cause Plaintiff adverse publicity to interfere with current and prospective business relationships," FAC ¶ 11, Weston has sufficiently alleged violations of Cal. Penal Code § 632 and 637, as well as an invasion of privacy. Thus, contrary to Defendants' assertion, Plaintiff has sufficiently alleged a wrongful purpose to implicate the exception to the One-Party Consent rule under the Federal Wiretap Act.

## VII.   DEFENDANTS' "SECONDARY LIABILITY" ARGUMENT FAILS.

Defendants contend they "cannot be secondarily liable on Plaintiff's civil Federal Wiretap Act claim for conduct allegedly undertaken by Voigt, Plaintiff's claims based on Voigt's alleged recording of the Recorded Call and subsequent disclosure to Plaintiff's coworker and family members fail as a matter of law." Mot. at 13. The argument is unavailing.

Defendants' exact argument—that they are immune from liability because they were mere co-conspirators who did not have their fingers on the "record" button when the telephone call was wiretapped—was directly rejected in another case before Your Honor. Specifically, a plaintiff alleged that on "August 18, 2009, defendants O'Keefe and Giles

visited the ACORN office" and "O'Keefe and Giles conspired to secretly video and audio tape Vera at the ACORN office." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 961 (S.D. Cal. 2011). Defendant Giles moved to dismiss, arguing that "because the complaint alleges that O'Keefe was wearing a hidden camera and recorded audio and video of the visit,' she cannot be liable under § 632." *Vera*, 791 F. Supp. 2d at 962-63. Similar to Defendants here, Giles asserted that

> § 637.2 only provides a right to recover damages against O'Keefe because he is the "person who committed the violation" by making the recording. Thus, Giles contends "[s]ection 632 only punishes the "person who . . . records . . . the confidential communication."

*Vera*, 791 F. Supp. 2d at 963. Giles further argued that

> the test and structure of § 632 reflects the intent to preclude actions against persons who assist in the recording of a confidential conversation but who do not carry out the recording with an electronic device.

*Vera*, 791 F. Supp. 2d at 963.

The Court rejected the defense, finding Cal. Penal Code § 31 provides:

> "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, **or aid and abet in its commission**, or not being present, **have advised and encouraged its commission, . . . are principals in any crime so committed**.

*Vera*, 791 F. Supp. 2d at 963 (emphasis in original). Thus, the Court held

> Although California may enact a particular statute or define a particular cause of action to preclude or include aider and abettor and conspirator liability, there is no exclusion to the applicability of Penal Code § 31 with respect to Penal Code § 632. Accordingly, the Court finds that plaintiff has stated a claim against Giles as a principal in violating Penal Code § 632 and allowing for recovery of damages under § 637.2.
>
> The Court further agrees with plaintiff that a plain reading of the language of the statute is broader than defendant contends. To record a confidential communication can mean, in the ordinary sense of the term, to cause a confidential communication to be recorded.

*Vera*, 791 F. Supp. 2d at 963-64. The Court further held

> The plain language of § 632 is directed to the surreptitious recording of confidential

16

communications and not the manner or method of recording the conversation. Given the ordinary meaning of the term "record", Giles's alleged participation with co-defendant O'Keefe in the recording of the conversation with plaintiff is sufficient for liability under § 632 and for obtaining damages under § 637.2.

*Vera*, 791 F. Supp. 2d at 964. Thus, Defendants are wrong that they cannot be held liable under these same statutes because it was Voigt who hit the "record" button. While *Vera* specifically addressed Cal. Penal Code § 632, rather than the Federal Wiretap Act, the same analysis applies here.

Weston specifically alleges that "Defendants Lefiti, Minella, and MLG conspired with Voigt to make" the "recording with actual knowledge that doing so would be illegal. Defendants scripted out with Voigt specifically what she should try to get Plaintiff to say." FAC ¶¶ 10-11. See also FAC ¶ 12 (Defendants "told Voigt to record the call."); FAC ¶ 45 ("All Defendants knowingly gave substantial assistance or encouragement to each other in carrying out the unlawful interception, use, dissemination, and disclosure of the illegally intercepted communications alleged herein."). "To record a confidential communication can mean, in the ordinary sense of the term, to cause a confidential communication to be recorded." *Vera*, 791 F. Supp. 2d at 964.

Further, Weston does not merely allege that Defendants instructed Voigt to make and distribute the recording at issue. Rather, he alleges that Defendants shared the recording among their employees, instructed their employees to email the recording, and repeatedly lodged the recording and transcript in San Diego Superior Court. See FAC ¶¶ 18-19, 24, 28, 42, 45, and 56.

Thus, Defendants contention that they "cannot be secondarily liable on Plaintiff's civil Federal Wiretap Act claim," Mot. at 13, fails.

## VIII.  **PLAINTIFF'S DISCLOSURE CLAIMS ARE MERITORIOUS.**

Defendants contend Plaintiff's claims relating to the disclosure of the unlawful recording fails because "Plaintiff has not sufficiently stated a claim for unlawful interception." Mot. at 19. Because Plaintiff does, in fact, state a claim for unlawful interception, this argument fails. See Sections II-VI.

17

Citing *U.S. v. Echavarria-Olarte*, Defendants further argue that their transcription, use, and disclosure of the unlawful recording was proper because illegally obtained wiretaps may be used as evidence of impeachment. Mot. at 19-20. However, that action did not concern liability under the Federal Wiretap act at all. Rather, the Defendant "was indicted" for

> conspiracy to import cocaine into the United States in violation of 21 U.S.C. § 963; for conspiracy with the same defendants to possessing with intent to distribute and to distribute five tons of cocaine in California in violation of 21 U.S.C. § 846; and, in violation of 18 U.S.C. §§ 1952 and 2.

*United States v. Echavarria-Olarte*, 904 F.2d 1391, 1393 (9th Cir. 1990). The government had "received authorization from District Judge Conti to tap the telephones of Raymond Lane and Simon Castorena Sotelo." *Echavarria-Olarte*, 904 F.2d at 1395. At trial, "Echavarria unsuccessfully moved to suppress the evidence obtained as a result of the wiretaps" and was convicted. *Id.* The defendant appealed "contending that the wiretap evidence was inadmissible at his trial" because they "were not necessary." *Id.* The court noted that it had "upheld the suppression of wiretap evidence where the wiretapping was found to be unnecessary because of an undercover agent's penetration of a criminal conspiracy." *Id.* at 1396. The court rejected the argument, holding the "the telephone taps were necessary in order to prevent the completion of the crimes and to apprehend the criminals." *Id.* Thus, the opinion, which concerned a court-approved wiretap in a criminal action for conspiracy to distribute cocaine, has no bearing on the claims or defenses here.

Defendants' reliance on *Culbertson v. Culbertson*, 143 F.3d 825 (4th Cir. 1998), Mot. at 20, is also misplaced. In that action, the plaintiff sued her former husband and his brother for violations of 18 U.S.C. § 2520. *Culbertson v. Culbertson*, 143 F.3d 825, 826 (4th Cir. 1998). She alleged that the defendants' use of an unlawful recording in the divorce case violated the federal statute. Because "state law at the time of the South Carolina family court proceeding allowed the use of illegally obtained telephone conversations for impeachment purposes, Benjamin Culbertson's submission of transcripts of the conversations was not

improper." *Id.* at 828.

Here, in contrast, California "Penal Code section 632 expressly forbids the recording of confidential communications **without the consent of all parties** and makes such recordings **inadmissible in any judicial**, administrative, legislative, or other proceeding." *In re L.J.*, 89 Cal. App. 5th 741, 752 (2023) (emphasis added). Thus, Defendants' reliance on *Culbertson* and differing South Carolina law is misplaced.

Here, Defendants lodged the recording and transcript at issue in San Diego Superior Court (and refiled it here, without redactions). They rely exclusively on federal authority for the proposition that illegally obtained wiretaps are admissible evidence. However, they fail to identify any controlling, state court authority in support of this proposition, nor could they, as Cal. Penal Code § 32 "makes such recordings inadmissible in any judicial, administrative, legislative, or other proceeding." *In re L.J.*, 89 Cal. App. 5th at 752.

Defendants further contend that

> Even if the FAC alleged facts of some disclosure by Defendants outside the scope of opposition evidence to impeach verified statements by Plaintiff (it does not), Plaintiff has also failed to allege factual allegations establishing that Defendants purportedly "kn[ew] or ha[d] reason to know" that the recording was obtained in violation of the Act at the time any alleged disclosure was made, as would be required to state a claim for purportedly unlawful disclosure.

Mot. at 20. Again, Defendant conveniently ignores Plaintiffs' well-pleaded allegations. Weston specifically alleges that "Defendants knew . . . that Voigt could never use the illegal recording in Court." FAC ¶ 12. See also FAC ¶ 10 (Defendants made the "recording with actual knowledge that doing so would be illegal."). Further, when Defendants initially submitted the recording in the family law action, "Weston sent an email to Defendants Minella and Lefiti, also with a CC to their paralegal" which stated:

> Your client, under your advice, made this recording in violation of Cal. Penal Code. 636. She then e-mailed the recording to my co-worker in violation of CPC 637. You then violated 637 by placing the recording into evidence, even though you know such illegal recordings are not admissible.

19

FAC ¶ 20. "Lefiti and Minella did not respond to Weston's email. Instead, they continued to possess and distribute the recording." FAC ¶ 21. Thus, Defendants assertion that Plaintiff failed to allege that they "knew or had reason to know" that the recording was unlawfully obtained, Mot. at 20, fails.

Defendant also argues that

> Plaintiff has failed to sufficiently allege any purported "disclosure" by Defendants to another person of the content of the Recorded Call recording where the subject transcript was allegedly served on solely Plaintiff himself (*see* FAC, ¶ 18), and thereafter lodged with the Court but then never ultimately identified or admitted as an Exhibit during the subject evidentiary hearing.

Mot. at 20. This argument also fails. First, it relies on Defendants assertion, which is not alleged in the FAC, that the recording was "lodged with the Court but then never ultimately identified or admitted as an Exhibit during the subject evidentiary hearing." Mot. at 20. However, on "a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 826 (N.D. Cal. 2018) (citing *MDIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Further, at this stage, "'[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'" *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Moreover, Defendants' argument ignores Weston' allegation that

> On January 4, 2023, Voigt, in compliance with Defendants' plans, began distributing the illegal recording, including to Plaintiff's co-worker and two members of his family, thereby violating Cal. Penal Code § 637 and 18 U.S.C. § 2510, which prohibit the dissemination of illegal recordings. Voigt, like Defendants, made the recording with the intent of violating Plaintiff's privacy, extortion of money, and inflicting emotional distress upon him.

FAC ¶ 17. Thus, each of Defendants arguments fail, and Plaintiff's disclosure claim is meritorious.

IX.   **PLAINTIFF'S CLAIMS DO NOT IMPERMISSIBLY INVADE THE ATTORNEY-CLIENT RELATIONSHIP.**

Citing *Dietz v. Meisenheimer & Herron,* 177 Cal. App. 4th 771, 792 (2009), Defendants argue that the Wiretap Act claim should be dismissed because it impermissibly invades the attorney-client relationship. Mot. at 22-23.

The first problem with this argument is that it is a California-law defense to a federal statute, and Defendants rely exclusively on state authority.

Second, even if the defense were available to federal claims, Defendants fail to address the four factors a court must consider prior to dismissing "on the ground that a defendant attorney's due process right to present a defense would be violated by the defendant's inability to disclose a client's confidential information if the action were allowed to proceed." *Dietz*, 177 Cal. App. 4th at 792.

In *Dietz*, the defendant argued that "the trial court erred as a matter of law in balancing Dietz's interest in prosecuting the action against Meisenheimer's inability to defend itself without violating its ethical duties." *Dietz*, 177 Cal. App. 4th at 790. The plaintiff claimed that "pursuant to *Solin*, due process requires dismissal if the lawyer-defendant would be prevented by his duties to his clients from presenting any of the relevant evidence that may bolster the defense." *Id.* at 792.

The Court of Appeal held

Meisenheimer vastly overstates the breadth of the holding in *Solin*. If dismissal were required whenever a lawyer's ethical duties prevented the lawyer from presenting evidence having any relevance to the action, without respect to the materiality of the evidence, the "drastic action" of dismissal would become commonplace. (*General Dynamics, supra*, 7 Cal.4th at p. 1190.) Nothing in *Solin*, nor any other authority of which we are aware, requires such a result.

*Dietz*, 177 Cal. App. 4th at 792. Rather,

there are at least four factors that a court must consider, under *General Dynamics* and its progeny, before a court may dismiss a case on the ground that a defendant attorney's due process right to present a defense would be violated by the defendant's inability to disclose a client's confidential information if the action

were allowed to proceed.

*Dietz*, 177 Cal. App. 4th at 792. "First, the evidence at issue must be the client's confidential information, and the client must be insisting that the information remain confidential." *Id.* Second, the "confidential information" must be "highly material to the defendants' defenses." *Id.*

> Third, before dismissing a case on due process grounds, the trial court must determine whether it is able to effectively use "ad hoc measures from [its] equitable arsenal," including techniques such as "sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings," so as to permit the action to proceed.

*Dietz*, 177 Cal. App. 4th at 793. Finally, the

> trial court should consider whether it would be "fundamentally unfair" to allow the action to proceed. (Solin, supra, 89 Cal.App.4th at p. 463.) Fundamental fairness in this context is an extension of the principle that, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield."

*Id.* See also *Reilly v. Greenwald & Hoffman, LLP*, 196 Cal. App. 4th 891, 904 (2011) ("In *Dietz*, we concluded there are several factors a court must consider, under *General Dynamics Corp. . . .* and its progeny, before it may dismiss a case on the ground that a defendant attorney's due process right to present a defense would be violated.")

Analyzing these factors, the Court of Appeal held

> *General Dynamics* and its progeny thus support the notion that a court may take the extraordinary step of dismissing a plaintiff's claim on the ground that an attorney defendant's due process right to present a defense is compromised by the defendant's inability to present confidential information in support of that defense only in the rarest of cases, after the court has considered all of the factors discussed above. On this basis, we reject Meisenheimer's contention that due process requires dismissal if an attorney defendant would be prevented by ethical duties from presenting "any of the relevant evidence that may bolster the defense."

*Dietz*, 177 Cal. App. 4th at 794.

Here, Defendants request that the Court take such an "extraordinary step" without even mentioning the four-part test is met. However, a court may properly dismiss on such

22

grounds, "**only in the rarest of cases**," and "**after the court has considered all of the factors discussed above**." *Dietz*, 177 Cal. App. 4th at 794 (emphasis added).

In *Richter v. Ausmus*, a defendant argued that "Richter's claim against him as an attorney hired by Oakland is barred under 'the *McDermott* doctrine.'" *Richter v. Ausmus*, 2023 U.S. Dist. LEXIS 61308, at *17 (N.D. Cal. Apr. 6, 2023). Judge Orrick rejected the argument because

> before dismissing a claim under this doctrine a trial court must consider "the interests of a plaintiff in bringing a potentially meritorious claim that is not premised on confidential information, in the course of determining  whether a defendant's right to present a defense premised on confidential information requires dismissal of the claim." *Dietz v. Meisenheimer & Herron*, 177 Cal.App.4th 771, 791, 99 Cal.Rptr.3d 464, 480 (Cal. App. 4 Dist., 2009) (emphasis in original). What, if any, information possessed by Stanfield might be protected by the attorney-client interest is unclear. . . . In his Supplemental Brief, Stanfield fails to identify or address the four factors that courts weigh to determine whether a case is barred under *McDermott*. I cannot dismiss Richter's claims against Stanfield on this basis at this juncture.

*Richter*, 2023 U.S. Dist. LEXIS 61308, at *17-18. Here, too, Defendants failure to address the relevant standard is fatal to their argument.

Dismissal is especially inappropriate at this stage because the Complaint is taken as true and alleges facts that would support application of crime-fraud exception to privilege. See *State Farm Fire & Cas. Co. v. Superior Court*, 54 Cal. App. 4th 625, 643 (1997); *BP Alaska Expl., Inc. v. Superior Court*, 199 Cal. App. 3d 1240, 1262 (1988)).

## X.   **CONCLUSION**

Family law attorneys, with a disturbing frequency, encourage their clients to make illegal recordings of current and former romantic partners. When they are caught doing so, they should be prosecuted, and sometimes are. In *Gunter v. Virginia State Bar*, 238 Va. 617 (1989), the Supreme Court of Virginia upheld the suspension of the license of an attorney who advised a client to record the telephone calls of his spouse and then used them in Court. In *United States v. Wuliger*, 981 F.2d 1497 (6th Cir. 1992), a divorce attorney was convicted

of three criminal offenses relating to his use of recordings his client made of the client's spouse's telephone calls, though the convictions were reversed and remanded for retrial because of an error in the jury instructions.

Indeed, when the federal anti-wiretap act was passed, it was in a large part targeted at the common practice, seen here, of family-law attorneys procuring their clients to record the conversations of their spouses. As the Ninth Circuit held earlier this year:

> The legislative history of the Wiretap Act makes clear that Congress intended it to apply to domestic relations disputes. Congress knew that divorcing spouses were increasingly using electronic surveillance techniques to gain advantage in marital disputes and, when drafting the Act, viewed interceptions in this context as an area of particular concern.

*Pyankovska*, 65 F.4th at 1078.

The motion should, respectfully, be denied. To the extent that the Court finds the FAC deficient in any way, Plaintiff respectfully requests leave to amend.

DATED: August 28, 2023                    Respectfully Submitted,

                                          /s/ Gregory S. Weston